BERNICE LLOYD, ADMINISTRATRIX OF LOUIS LLOYD, DECEASED, v. COLUMBUS MUTUAL LIFE INSURANCE COMPANY.

(Filed 6 May, 1931.)

**Insurance R .a—Construction of policy of accident insurance as to risks covered thereby.**

Where a policy of insurance provides for the payment of a certain sum to the beneficiary named therein in case the insured dies from accidental bodily injuries resulting from "the wrecking or disablement of any . . . private automobile of the pleasure-car type," the language is unambiguous and parol evidence is not admissible to explain the meaning of the words used, and the policy does not cover death from injuries resulting from a wreck of a truck used principally in hauling milk, the word "type" used in the policy implying classification, and the distinction between automobiles and trucks being recognized by the motor vehicle statute of the State, and where the facts are admitted the question of whether death resulted from a risk covered by the policy becomes a proposition of law.

CIVIL ACTION, before *Grady, J.,* at January Special Term,. 1931, of DURHAM.

Plaintiff's intestate, Louis Lloyd, was killed on 23 November, 1929, and at the time of his death he held an insurance policy issued by the defendant on 28 February, 1929. The policy provided an indemnity of $1,000 for death from accidental bodily injuries if such death resulted from "the wrecking or disablement of any private horse-drawn vehicle, or private automobile of the pleasure-car type in which the insured is riding or driving," etc. The evidence tended to show that at the time of his death the deceased was riding in a 1929 Model A, one and a half ton Ford truck. This truck had an enclosed cab with a seat that would

accommodate three passengers comfortably. The owner of the truck testified that·it was used for hauling passengers and truck. He said: "There was no place at the back for passengers to ride. That was to carry what we wanted to haul. We had a body on the back. Sometimes I took my. family to church on it. . . . We had a car other than this truck.. . . . On the back is a truck body which was used for hauling milk from the Lawrence Dairy on the milk route. It was used for most anything that come to hand and done more hauling of milk than anything else. I also had a five-passenger Ford touring car. That was the principal pleasure car of the family. : . . There was a wreck." Two other men were riding in ·the truck with the deceased at the time of the wreck.

The third issue was as follows: "Was plaintiff's intestate killed by the wrecking and disablement of a private automobile of the pleasure-car type in which insured was riding as alleged in the complaint?"

At the close of plaintiff's testimony the trial judge intimated that he would give a peremptory instruction directing the jury to answer the third issue "No." The policy provided a benefit of $50 for death due to accident, and the trial judge further intimated that he would instruct the jury to answer the fourth issue "$50."

From judgment upon the verdict awarding plaintiff the sum of $50 she appealed.

*R. O. Everett and John W. Hester for plaintiff.*
*Fuller, Reade & Fuller for defendant.*

BROGDEN, J. Is a Ford one and a half ton truck, used principally for hauling milk, "a private automobile of the pleasure-car type?"

The plaintiff insists that the words "private automobile of the pleasure-car type" is an ambiguous term requiring parol evidence as an aid to arriving at the sense and meaning of the words used. The Court does not concur in this view. *Anderson v. Ins. Co.,* 197 N. C., 72; *Grant v. Ins. Co.,* 197 N. C., 122; *Jolley v. Ins. Co.,* 199 N. C., 269.

There is no material controversy between the parties with reference to the facts. Hence the question whether a Ford truck used principally for hauling milk is a "private automobile of the pleasure-car type," becomes a bald proposition of law.

The motor vehicle statute of North Carolina recognizes the difference between automobiles and trucks. This difference appears from C. S., 2612, which levies license fees for motor vehicles. The license fee for an automobile is based upon horse power, and that on motor trucks is based upon carrying capacity or tonnage.

An automobile truck was defined in *American-La France Fire Engine Co. v. Riordan,* 6 Fed. (2d), 964. The Circuit Court for the Second

Circuit said: "An automobile truck is a vehicle for the conveyance for commercial purposes over ordinary roads, and the average type of that kind of vehicle is especially designed both in its propelling mechanism and in its body construction for that function." Referring to a statute taxing motor trucks, the Supreme Court of Kansas in *Filson v. Johnson,* 222 Pac., 742, said: "They are designed for and put to different uses, and the provision defining a motor truck in effect declares that the purpose or use of the vehicle shall determine the classification. If the owner rebuilds and converts an automobile originally designed and sold to be used as a pleasure car, into a motor truck, which he uses to transport commodities, goods and merchandise, produce, or freight, it is his intention and use that governs."

The word "type" used in the policy implies the idea of classification.

Manifestly, the truck in which plaintiff's intestate was riding at the time of his death was by intention, use and construction a commercial vehicle and so classified by the North Carolina statute. Consequently the coverage clause of the policy issued by the defendant did not, upon the evidence, include the accidental death of plaintiff's intestate, and the ruling of the trial judge is upheld.

No error.