[File No. 6104.]

KATHRYN SMITH, Appellant, v. MARYLAND CASUALTY COMPANY, Respondent.

(246 N. W. 451.)

Opinion filed January 25, 1933.

*George A. Bangs,* for appellant.

*Conmy, Young & Conmy,* for respondent.

BURR, J. This action is brought to recover upon a "Special Automobile Accident Policy" in which the plaintiff is named as beneficiary.

At the close of the plaintiff's case the defendant moved the court to dismiss the action, which motion was renewed at the close of the entire case. The court dismissed the jury, and later rendered judgment for the defendant. From the judgment and from the order denying her motion for a new trial the plaintiff appeals.

Plaintiff is the widow of W. Jay Smith, killed in an automobile accident, occurring May 26, 1930. Defendant had issued to the deceased a "Special Automobile Accident Policy" upon an application by the insured made upon a blank furnished by the company describing the policy as one which would pay for injuries sustained "while operating, driving, riding in, demonstrating, adjusting, repairing or cranking an automobile;" but not insuring "any driver or operator of an

automobile truck." The policy insured the deceased, as specified in the application blank.

Under a heading denominated "Additional Provisions" the policy states: "This policy shall not cover injuries, fatal or non-fatal, suffered: (9) By any person while working on, cranking, driving, or riding in or on any motorcycle, automobile truck, tractor, patrol wagon or fire apparatus or air craft of any description."

It is conceded the insured was killed in an automobile accident; but the defense is that at that time he was driving and riding in an "automobile truck."

The issue involves, solely, the nature of the car in which the defendant was riding.

At the time the policy was issued the defendant was the owner of a passenger car and later he purchased the car in question. This new car, when sold to him, was described as a "Ford Pickup."

The plaintiff apparently concedes that if the accident occurred while the deceased was riding in an "automobile truck," she cannot recover; but it is her contention that this vehicle was not an "automobile truck" within the purview of the policy. Plaintiff says, in effect, that the policy covered—so far as this case is concerned—accidents in any class of automobile except an "automobile truck;" and, therefore, an accident occurring while riding in a "pickup" was covered by the policy.

The car involved is not a passenger car as ordinarily understood—that is, it is not a sedan, runabout, coupe, etc. It is one of the well-known varieties of light delivery cars, having a cab on the front part covering the driver's seat, and back of this is an open platform with sides and drop end. The dealer, who sold the car, testified that this "pickup is a car mounted on the Ford passenger car chassis with a cab similar to the cab which is mounted on our trucks, and has a box, a steel box, approximately five feet long and four feet, four or five inches wide." Further, that with the exception of having a heavy rear spring the chassis "is the same as the passenger car chassis;" and that this particular car was of that type. He then described the difference between the chassis on this car and on the Ford truck; that the latter is the heavier chassis, longer wheel base and "of much heavier construction;" different construction and arrangement of springs, different drive and different transmisison of power from that used on the

"pickup" or roadster. He testified, regarding this car in issue, "personally we do not speak of it as being a half ton truck;" the trade calls it a "lite" delivery—that it is not generally considered a truck—though he did say that if any prospective buyer asked for a half ton truck he would show him this type. He said that as a Ford dealer he had three classes of cars for sale, the year this was sold—"passenger cars, commercial cars, and trucks, and this pickup was included in the commercial class." He explained that they were required to make a ten day report and this type was reported in the commercial classification, that this was the classification given to it by the Ford Motor Company. Another dealer testified to the same effect. Dealers produced by the defendant testified that in trade parlance, this particular car was called a truck, and also known "as a Pickup,—Light Delivery." They admitted that the chassis for this pickup was of the passenger car type, and not the heavier truck type; that in the reports they were required to make every day there were "three separate classes of automobiles in 1929"—passenger, commercial, and truck.

The insured was a civil engineer and contractor and at the time of the accident was on his way to Enderlin to take charge of a contract for excavation. He had with him in this vehicle some of his employees, their luggage and his surveying instruments. The testimony shows the deceased used this vehicle as a passenger car "for driving around and moving some small stuff from one place to another," that he had a regular truck for the hauling of freight but would use this car for "an emergency call for repairs—if they were small enough to carry in that truck,"—for carrying his surveying instruments and he "may have hauled five gallons or so" of gasoline in it at times.

All through the policy issued reference is made to "automobile" accident, explosion, burning, etc. In large heavy type the policy is described as "Special Automobile Accident Policy." The application blanks provide spaces for information to be furnished by the applicant and place for signature—all on the first page. On the back of the application blank, in large type, we find the phrase "Special Automobile Accident Policy," with a reference to the number of "automobile fatalities last year," and the statement, as in the policy itself, that the policy insures one against injuries sustained "while operating, driving, riding in, demonstrating, repairing or cranking an automobile," and

against injuries sustained "by being struck or run down by an automobile while walking on or across any public highway." It is not until we come to the very last lines on the back of the application for the policy that we find in small type, the statement "This policy does not cover any driver or operator of an automobile truck." It is the same in the policy itself. Any one reading the policy casually might readily consider it covered all accidents sustained while driving or riding in an automobile. The exception is at the end of the policy. The policy sets forth a "copy of application," but this copy does not include anything that was on the back of the application.

It is the contention of the defendant that the word "automobile" when used throughout the policy, means what is ordinarily known as a passenger car—a car designed for that purpose—and that we must so construe the term when determining the character of the vehicle in which the deceased was riding. But the same term "automobile" is used with reference to the vehicle which may run down an insured as is used in describing a car in which the insured may be riding at the time of the accident. The insured in such policy is protected against being "run down by an automobile while walking on or across a public highway," but if the term "automobile" is to be confined to passenger cars only then he would not be protected if run down by an automobile truck.

An automobile, in the broad sense, is any motor vehicle—"a self propelled vehicle suitable for use on the street or highway." In common parlance we think frequently of an automobile as a vehicle whose power is furnished by gasoline; but it may be electric power or steam power. It is power generated within itself, but controlled by the driver. A truck, whose power is secured from gasoline, is an automobile in this sense, and doubtless the policy must so construe the term at times, otherwise, as indicated before, an insured would not be protected against being run down by a truck.

The testimony shows conclusively that the vehicle was not being used as a truck at the time the accident occurred. The deceased was traveling from his home to the place where he had his contract and with him he had some of his employees. He was using this vehicle the same as if it were what is known ordinarily as a passenger car.

Clearly the policy is intended to cover injuries sustained while driv-

ing an automobile of any kind or description whatsoever—other than the ones expressly excepted.

One exception is "automobile truck." The term "automobile truck," being an exception, must be defined strictly in order to carry out the purpose of the policy.

The exceptions "are construed most strongly against the insurer, and liberally in favor of the insured. This is now the settled rule for construing all kinds of insurance policies, rendered necessary, especially in modern times, to circumvent the ingenuity of the insurance companies in so framing contracts of this kind as to make the exceptions unfairly devour the whole policy." Equitable Acci. Ins. Co. v. Osborn, 90 Ala. 201, 9 So. 869, 870, 13 L.R.A. 267, 269; Utter v. Travelers' Ins. Co. 65 Mich. 545, 32 N. W. 812, 816, 8 Am. St. Rep. 913; Federal L. Ins. Co. v. Kerr, 173 Ind. 613, 618, 89 N. E. 398, 91 N. E. 230; Starr v. Ætna L. Ins. Co. 41 Wash. 199, 83 Pac. 113, 4 L.R.A. (N.S.) 636. See also Clemens v. Royal Neighbors, 14 N. D. 116, 103 N. W. 402, 8 Ann. Cas. 1111.

It is a matter of common knowledge that such policies are prepared by men learned in the law, trained in preparation of such contracts, and who have studied the "legal effects of all multifarious provisions;" while the insured are generally those who are not given to considering doubtful provisions in such contracts, and assume the policy is of a character discoverable by a casual examination.

The burden of proof is upon the defendant to show the accident occurred within the excepted classes. Stevens v. Continental Casualty Co. 12 N. D. 463, 469, 97 N. W. 862; Starr v. Ætna L. Ins. Co. 41 Wash. 199, 83 Pac. 113, 114, 4 L.R.A. (N.S.) 636; Kirkpatrick v. Ætna L. Ins. Co. 141 Iowa, 74, 117 N. W. 1111, 1113, 22 L.R.A. (N.S.) 1255, 1258.

The policy is to be construed, usually, when weighing "the meaning of words and terms used in it—as a large class not versed in lexicology are sure to regard its terms and scope." Richards v. Travelers' Ins. Co. 89 Cal. 170, 176, 26 Pac. 762, 23 Am. St. Rep. 455.

The policy itself does not define the term. The insured was killed while driving in an automobile. Was it an "automobile truck" within the meaning of the exception? There is testimony showing that the vehicle is not so classified, that it is not in trade parlance a "truck,"

that it is a commercial car, as distinct from truck or passenger car, that it is a sort of light car which would be used as a passenger car and at the same time carry a certain amount of goods because it has a capacity of one half ton, equal to the weight of about six average men. A converted Packard Car, equipped as a wrecking car, and with a box for holding tools, is not considered a truck within the meaning of the term "automobile truck" in an exception similar to the one under consideration. Paltani v. Sentinel L. Ins. Co. 121 Neb. 447, 237 N. W. 392. The court says: "It was not built for carrying heavy loads and was not so used. It was equipped with tools for doing a certain work. It was suitable for and was used to carry passengers. The insured was a passenger at the time of the accident. We are of the opinion that the car in this case is not a truck within the authoritative definitions herein quoted." (Having quoted from the Oxford and New Century dictionaries.) A serious question arises from the testimony in this case as to whether this class of vehicles in question was designed for any such purpose, and therefore could be called a truck in the ordinary acceptation of that term. Had the policy been intended to cover accidents in passenger automobiles only it would have been easy to have stated it in such language.

Owing to the testimony introduced, the character of the policy, the terms employed therein, and the purpose of the policy, it became a question for the jury to determine whether the automobile in which the deceased was riding at the time of his death was an automobile truck under the law of the case as given by the court. This being so it was error on the part of the trial court to take the case from the jury and dismiss the action.

The motion for a new trial should have been granted. The case therefore is reversed and a new trial ordered.

NUESSLE, Ch. J., and CHRISTIANSON, BIRDZELL and BURKE, JJ., concur.