**FIDELITY & CASUALTY CO. OF NEW YORK v. MARTIN.**

No. 6930.

Circuit Court of Appeals, Ninth Circuit.

July 27, 1933.

Howard Toole and Brice Toole, both of Missoula, Mont., for appellant.

John E. Patterson and Edward C. Mulroney, both of Missoula, Mont., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

WILBUR, Circuit Judge.

This action was brought by Ines Martin against the Fidelity & Casualty Company of New York to recover $5,000 under an accident insurance policy called a "personal automobile accident policy," issued to her husband, Teddy Martin, by that company, in which she was named as beneficiary in case of the death of the insured.

The insurance contract in question contained the following provisions:

"The Fidelity and Casualty Company of New York does hereby insure the persons named in Statement A of the copy of the application in the principal sum and weekly indemnity hereinafter specified, against—

"Bodily injury sustained during the term of one year from noon, standard time, of the day this policy is dated, through accidental means—

"(1) While riding in or on, driving, operating, demonstrating, or while cranking, adjusting, repairing, a private passenger automobile."

Also, there are "Additional Provisions" as follows:

"A. This insurance shall not cover * * * injuries fatal or otherwise sustained by the insured: * * *

"3. While riding or driving in or on any motorcycle, automobile truck. * * * "

In case of death resulting from such bodily injuries within ninety days thereafter, the insurance company agreed to pay the beneficiary $5,000. While the policy was in effect on July 24, 1931, the insured, while driving alone in an automobile called a "Ford Roadster Pick-up," was struck by a passenger train of the Chicago, Milwaukee, St. Paul & Pacific Railway Company at a grade crossing in Mineral county, Mont., and instantly killed. He had left his place of business about noon, after having had lunch at his home, and had started in said automobile on a fishing trip for the remainder of the day.

The insured was a merchant operating a general store in Alberton, Mont. He purchased an automobile called a "Ford Roadster Pick-up closed cab" in 1929, and on June 24, 1931, obtained the policy in question.

Roy Anderson, a Ford salesman, testified that the car purchased by Mr. Martin was a Ford roadster, pick-up body, and not a truck; that "it is classified as a commercial car, and under the commercial cars as a roadster, pick-up body"; that "a roadster, pick-up body, has the same chassis that a coupe or a sedan has, and the motor, wheels, everything, is the same; it is the same in every particular, except the back end, and it has the same seating capacity as the coupe. We also handle Ford trucks. The trucks are distinguished from the pick-ups by having longer wheel base, the wheel base is longer, and they are built heavier. The chassis of the truck is not the same as that of the pick-up. They are two different chassis. They are not the same. The motors are the same in both cars, or were at that time."

He testified that the removable box at the back end of the pick-up car was 54 inches long, 43 inches wide, and 13 inches deep, and stated that the "primary object of putting it on was to carry loads." When asked if practically every one of such cars sold by their agency was used commercially in stores and for delivery, answered: "Not all of them, but 9 out of 10 of them carry burdens and not persons, and property and not people."

H. O. Bell, the Ford dealer, was called by the defendant. He testified that the body on the car in question was called a roadster pick-up.

"It has a removable box in the back end and a passenger seat in front. It is a closed cab. As to that cab not being like the passenger seat, however, that is, that the cab goes on the roadster pick-up and on no other, I will answer no. * * * It has a Model A chassis. * * * In our territory we sell most of them to stores for delivery and things like that. * * * As vehicles the roadster pick-up and the five-passenger sedan serve different purposes, one has a more general use that it can be put to than the other. I should say that the so-called five-passenger sedan is strictly for passenger purposes and the pick-up is more for commercial purposes."

The car was used by the insured both for pleasure and business purposes. His son, who worked in the store with his father, testified:

"That car was also used by others and by myself. I made small deliveries with it for the store; my father, however, did not do so, he never delivered anything in it to my knowledge, that is, from the store; I was right in the store. I also used the car for pleasure purposes. * * * It was used by my father for pleasure purposes only. * * *

"My father operated a general store at Alberton. In addition to the use which was made of the car by my father that car was used in and around the town of Alberton for small deliveries from the store. I did, myself, drive the car and deliver articles from the store to patrons of the store; that, however, was not necessarily the purpose for which the car was bought. At that time my father had a large car, a passenger car, but he didn't like to drive it. It was a Cadillac. * * * That car was sometimes used by us as a pleasure car. * * * " The car in question "was purchased early in 1929. During that period from the time it was purchased until the time it was destroyed by the train it was used by the store practically continuously during the day time except when my father had it out some place. * * * It bore a truck license. * * * The heavy hauling about the store was done by a garage man in Alberton; by

that I mean the large loads, the large freighting, in excess of the amount the Ford would carry. Occasionally we hauled in the Ford lighter loads, small parcels, between the depot and the store. * * * During that time my father never, to my knowledge, made any deliveries of any kind; it wasn't his duty around the store to make deliveries; he managed it and I made the deliveries; we had this Ford for that purpose."

Mrs. Martin, the widow of the deceased, testified as to the use of the Ford pick-up as follows: "Well we just used it for light general delivery around the store; anyone come in and ask for anything we would just take it to them; not very often, though, they didn't use it; Mr. Martin used it for pleasure an awful lot. * * * I don't know about how often on an average, per day or per week, it was used, but lots of days there were no deliveries, and for two or three days there wouldn't be any, and then there would be some, maybe the next day there would be one or two or three—maybe the next day none at all. * * * Mr. Martin and I used it to go on trips a lot."

The appellant insurance company with other casualty insurance companies issued an "Automobile Casualty Manual" containing the following "General Rules":

"General Rules

"Definition of Automobile Risks.

"1. For the purposes of Public Liability, and property Damage insurance, all motor-vehicles have been divided into four general classes and are defined as follows:

"Private Passenger Automobile: * * *

"(b) Any gas or steam automobile of the private passenger type that has been altered by the attachment of a small box, or that is of the so-called delivery sedan or *pick-up body type,* and is used to permit artisans, mechanics, or contractors to transport tools and materials, or to permit salesmen to carry samples, excluding, however, wholesale or retail delivery. * * *

"Commercial Automobiles:

"(a) Any automobile of the truck or delivery type used for the transportation or delivery of goods or merchandise and other business uses, including occasional pleasure use for the named insured's family * * *.

"Any automobile of the private passenger type which has been altered to permit the transportation of goods or merchandise for wholesale or retail delivery or any automobile of the so-called delivery sedan *or any or pick-up body type that is used for wholesale or retail delivery."* (Italics ours.)

While these rules are adopted for another purpose by the appellant insurance company and are not binding either on the insured or the insurance company, they at least constitute an admission by the company that a Ford pick-up body type of automobile may be considered as a "private passenger automobile" under certain circumstances.

At the conclusion of the evidence both sides moved for a directed verdict. Plaintiff's motion was granted, and a verdict and judgment was rendered for the face value of the policy. The insurance company appeals from the judgment. As stated by the Circuit Court of Appeals for the Eighth Circuit, speaking through District Judge Wyman in Detroit Fidelity & Surety Co. v. U. S., 59 F. (2d) 565, 566: "Since both sides moved for a directed verdict, the determination of the facts in the case by the court has the same force and effect as a verdict of a jury, and the decision, if supported by any substantial evidence, cannot be disturbed on appeal."

In Williams v. Vreeland, 250 U. S. 295, 39 S. Ct. 438, 439, 63 L. Ed. 989, 3 A. L. R. 1038, Justice McReynolds, speaking for the Supreme Court, stated the rule for the reviewing court in such a case as follows: "The established rule is: 'Where both parties request a peremptory instruction and do nothing more they thereby assume the facts to be undisputed and, in effect, submit to the trial judge the determination of the inferences proper to be drawn therefrom.' And upon review a finding of fact by the trial court under such circumstances must stand if the record discloses substantial evidence to support it."

The primary question for our consideration is whether or not the implied finding of fact by the trial judge that the deceased was riding in a "private passenger automobile" is without substantial evidence to support it. That it was a private automobile carrying a passenger is conceded. That it was carrying nothing else except fishing apparatus is clear. That it was equipped to carry freight (750 pounds) is equally plain. If, under the evidence, the ultimate question involved is one of fact, the decision of the trial court is supported by substantial evidence. We see no escape from the proposition that under the evidence the question was one of fact. If the car had been a Ford roadster equipped to carry passengers only, or a heavy truck solely adapted to carry freight, and the necessary attendants and operators,

no doubt the question of the applicability of the policy of insurance to accidents occurring therein would be a question of law, but, where the automobile is of the character disclosed by the evidence, its classification is one of fact to be determined by the court or jury, as the case may be. This conclusion finds support in a decision by the District Court of Appeal, First District, First Division of California, in Poncino v. Sierra Nevada Life & Casualty Co., 104 Cal. App. 671, 286 P. 729. The case of Lloyd v. Columbia Mut. Life Ins. Co., 200 N. C. 722, 158 S. E. 386, cited by appellant, has no application to the case at bar. The terms of the policy were different and the vehicle used by the insured was a 1½ ton truck.

In reaching this conclusion, it should be added that the policy furnishes no clue for the distinction made between injuries occurring to the insured while riding in a private passenger automobile and in or on a truck. If the distinction is not purely arbitrary, as it might be, we discern no reason for concluding that the insured incurred a greater hazard while riding in the Ford pick-up body automobile than in the Ford roadster, under the circumstances disclosed by the evidence.

Judgment affirmed.