FRANK H. DIRST, Appellee, v. THE AETNA LIFE INSURANCE COMPANY, Appellant.

No. 45922.

AUGUST 11, 1942.

REHEARING DENIED NOVEMBER 27, 1942.

Senneff & Duncan, of Mason City, for appellant.

Leming & Hobson, of Hampton, for appellee.

MILLER, J.—Plaintiff's petition demands judgment for $2,999.99, upon a policy of accident insurance which provided

for payment of $3,750 in the event of accidental death sustained "while the Insured is operating, driving, riding in, demonstrating, adjusting, repairing or cranking a private passenger automobile of the pleasure car type." The answer of defendant admitted that the policy was in force on December 12, 1940, the date of insured's death; that it was notified of his death and had denied liability; it denied all other allegations of the petition; specifically denied that the insured met his death through any connection with "a private passenger automobile of the pleasure car type," and denied that such death was covered by the policy. The cause was submitted to a jury which returned a verdict for the plaintiff. Defendant appeals.

The principal question presented by this litigation is whether the automobile which the insured was driving at the time of the accident which caused his death was a "passenger automobile of the pleasure car type". Exhibit 1, a photograph of the vehicle, is as follows:

This automobile is referred to as a 1938 Ford pickup, with maximum gross weight of three tons. It was registered as a

truck, Class A, and a license fee of $15 was paid. Its previous registration number had been T99-510. At the time of the accident the car was towing a wagon in which was loaded some lumber. There was nothing in the box of the pickup at the time.

Over objections of defendant, plaintiff was permitted to show that the Ford pickup was purchased for transportation back and forth to the farm of insured's father where the insured worked; the insured used it to take a hired man back and forth, to and from work; it was not used to haul anything in it; the motor, transmission, differential, wheels, and tires were the same as a Ford sedan except that the gear ratio for passenger cars was 1 to 3.78 and that for a pickup 1 to 4.11; the insured used the pickup to call upon his wife before they were married; after their marriage both of them drove the pickup; they had no other means of transportation. The evidence also showed that the box on the pickup was a regular Ford factory box with no arrangement for seating passengers in it; the frame and springs were heavier than those of a passenger car; the pickup weighed less than a sedan, had a capacity of one-half ton; the frame of a pickup costs $75, that of a passenger car $40.

At the close of the evidence, the defendant made a motion for a directed verdict. Among the grounds therefor were the following:

"1. The provisions of the policy upon which plaintiff's suit is predicated provides for liability only 'while the insured is operating, driving in, demonstrating, adjusting, repairing, or cranking a private passenger automobile of the pleasure car type'. The evidence without dispute shows that the assured came to his death while operating a pickup truck, and that said vehicle in which the assured came to his death was not a private passenger automobile of the pleasure car type. * * *

"2. There is no evidence in this record that would warrant a jury in finding that the vehicle in question came within the provisions of the policy hereinbefore in this motion set forth."

The motion was overruled. It should have been sustained.

We think that it is important to bear in mind that this is not a case where there was a general insuring clause and, in opposition thereto, an exclusion clause which tended to limit the general insuring clause. Here we are dealing solely with the insuring clause. For there to be any coverage whatever, as to the fatal injury at hand, it was necessary that such injury be sustained "while the Insured is operating * * * a private passenger automobile of the pleasure car type." It was incumbent on the plaintiff to prove that the motor vehicle was "a passenger automobile of the pleasure car type." The question is not whether the defendant has established an affirmative defense. It is solely, did the plaintiff prove his case. We hold that he did not.

As above pointed out, the Ford pickup was registered as a Class-A truck and a license fee of $15 was paid. This was done to comply with sections 5000.01 (4), 5008.05 and 5008.15 of the Code, 1939. Paragraph 4 of section 5000.01 provides:

" 'Motor truck' means every motor vehicle designed primarily for carrying livestock, merchandise, freight of any kind, or over seven persons as passengers."

Section 5008.05 provides:

"The annual fee for all motor vehicles except motor trucks, hearses, motorcycles, and motor bicycles, shall be equal to one percent of the value as fixed by the department plus forty cents for each one hundred pounds or fraction thereof of weight of vehicle, as fixed by the department."

Section 5008.15 provides:

"For motor trucks equipped with all pneumatic tires, the annual registration fee shall be: For a gross weight of three tons or less, fifteen dollars per annum."

According to the motor-vehicle law, it is clear that this pickup truck was not classified as a "passenger automobile of the pleasure car type." This is not necessarily conclusive, however, though it is persuasive.

We find no decisions of this court that involve the exact question now before us. A case that involved almost the same

insuring clause is that of Lloyd v. Columbus Mut. L. Ins. Co., 200 N. C. 722, 158 S. E. 386, 387, wherein the court states:

"The policy provided an indemnity of $1,000 for death from accidental bodily injuries if such death resulted from 'the wrecking or disablement of any private horse-drawn vehicle, or private automobile of the pleasure-car type in which the insured is riding or driving,' etc."

In sustaining a judgment entered pursuant to a directed verdict for the defendant, the court states:

"Is a Ford one and a half ton truck, used principally for hauling milk, 'a private automobile of the pleasure-car type?' * * * "There is no material controversy between the parties with reference to the facts. Hence the question whether a Ford truck used principally for hauling milk is a 'private automobile of the pleasure-car type,' becomes a bald proposition of law.

"The motor vehicle statute of North Carolina recognizes the difference between automobiles and trucks. This difference appears from C. S., 2612, which levies license fees for motor vehicles. The license fee for an automobile is based upon horse power, and that on motor trucks is based upon carrying capacity or tonnage. * * *

"The word 'type' used in the policy implies the idea of classification.

"Manifestly, the truck in which plaintiff's intestate was riding at the time of his death was by intention, use and construction a commercial vehicle and so classified by the North Carolina statute. Consequently the coverage clause of the policy issued by the defendant did not, upon the evidence, include the accidental death of plaintiff's intestate, and the ruling of the trial judge is upheld."

Applying the foregoing pronouncements to the record herein, about the only difference is that in that case the vehicle was a one-and-a-half-ton truck, whereas here it was a half-ton pickup. We think that the result should be the same in each case. Neither automobile was "of the pleasure car type."

The foregoing pronouncement of the North Carolina court

was quoted with approval in the later case of Taft v. Maryland Cas. Co., 211 N. C. 507, 191 S. E. 10.

Counsel for plaintiff have urged upon us quite a number of cases wherein a different result was reached as sustaining the decision of the trial court herein. However, the cases are all distinguishable, in our judgment.

In the case of Fidelity & Casualty Co. v. Martin, 9 Cir., Mont., 66 F. 2d 438, 439, the coverage is quoted as follows:

" 'Bodily injury sustained during the term of one year from noon, standard time, of the day this policy is dated, through accidental means—

" '(1) While riding in or on, driving, operating, demonstrating, or while cranking, adjusting, repairing, a private passenger automobile.'

"Also, there are 'Additional Provisions' as follows:

" 'A. This insurance shall not cover * * * injuries fatal or otherwise sustained by the insured: * * *

" '3. While riding or driving in or on any motorcycle, automobile truck. * * *' "

The insured was killed while driving a Ford roadster pickup. In affirming a judgment for plaintiff, the court states, at pages 440 and 441, as follows:

"The primary question for our consideration is whether or not the implied finding of fact by the trial judge that the deceased was riding in a 'private passenger automobile' is without substantial evidence to support it. That it was a private automobile carrying a passenger is conceded. That it was carrying nothing else except fishing apparatus is clear. That it was equipped to carry freight (750 pounds) is equally plain. If, under the evidence, the ultimate question involved is one of fact, the decision of the trial court is supported by substantial evidence. We see no escape from the proposition that under the evidence the question was one of fact. If the car had been a Ford roadster equipped to carry passengers only, or a heavy truck solely adapted to carry freight, and the necessary attendants and operators, no doubt the question of the applicability of the policy of insurance to accidents occurring therein would

be a question of law, but, where the automobile is of the character disclosed by the evidence, its classification is one of fact to be determined by the court or jury, as the case may be.''

However, it will be noted that the insuring clause there included ''a private passenger automobile,'' with no requirement that it be ''of the pleasure car type,'' and a later clause excluded an ''automobile truck.'' The question presented there was very different from that which confronts us here. Substantially the same situation that was presented in Fidelity & Casualty Co. v. Martin, supra, was presented by the cases of Gaumnitz v. Indemnity Ins. Co., 2 Cal. App. 2d 134, 37 P. 2d 712; Smith v. Maryland Cas. Co., 63 N. D. 99, 246 N. W. 451; Poncino v. Sierra Nevada L. & Cas. Co., 104 Cal. App. 671, 286 P. 729; Paetz v. London G. & A. Co., 228 Mo. App. 564, 71 S. W. 2d 826; and Paltani v. Sentinel L. Ins. Co., 121 Neb. 447, 237 N. W. 392. All of such cases are, therefore, distinguishable from that now before us.

Reliance is placed on the decision of this court in the case of Boles v. Royal Union L. Ins. Co., 219 Iowa 178, 180, 257 N. W. 386, 387, 96 A. L. R. 1400. The case is not controlling here because a different question was presented. This court describes the question of insurance coverage involved in that case thus:

''Boles was insured under two separate policies in the Royal Union Life Insurance Company. Each of these policies was for $1,000, and contained a provision for double indemnity if death resulted from accident sustained while the insured 'is a passenger and is within a passenger elevator (mine elevators excepted).' The insurance company admitted its liability for $1,000 on each of the policies, but denied liability under the double indemnity provision.''

Boles was fatally injured while riding on a freight elevator in the Hotel Maytag. The elevator was used to carry passengers at times. At pages 182 and 183 of 219 Iowa, page 388 of 257 N. W., the contentions of the parties are stated thus:

''It is the contention of the appellant that the clause of the insurance policy, providing for double indemnity if the death of

the insured resulted from an accident while he was a passenger and within a passenger elevator, had reference to and was understood by the parties to mean an elevator of such size, type, equipment, and construction as is generally and commonly known as a passenger elevator, as distinguished from the type of elevator which, because of its size, equipment, and construction is generally and commonly known as a freight elevator; * * * that the fact that what is generally and commonly known as a freight elevator may sometimes be used for the service of passengers does not make such elevator a passenger elevator, such as was within the contemplation of the parties to the insurance contract; * * *.

"Appellee challenges this contention of the appellant and urges that the ordinary and reasonable meaning of the language used in the policy does not support such a construction, and that the language itself shows that even the insurer had in mind that freight elevators may be considered as passenger elevators when used for that purpose. The clause of the policies here involved contained the further provision—'mine elevators excepted'. Appellee argues that it is well known that there are no elevators of the type known as passenger elevators in mines and that, by the exception contained in the policies, it is quite evident that the parties had in mind that the double indemnity clause would apply to elevators used for passengers even when such elevators were of the type known as freight elevators, except in the case of mine elevators."

In holding for the appellee, this court, at page 184 of 219 Iowa, at page 389 of 257 N. W., quotes with approval from Wilmarth v. Pacific Mut. L. Ins. Co., 168 Cal. 536, 143 P. 780, 782, Ann. Cas. 1915B, 1120, the following language:

" 'Appellant contends that the purpose which the insurer had in mind was to offer double indemnity for accidents suffered in elevators devoted to the carriage of passengers exclusively, because such elevators are commonly more carefully safeguarded than those used for the moving of freight, and that the chances of accidents from their operation are very slight. The answer to this position of appellant is that if the insurer

had intended such a limitation upon the term "passenger elevator" it would have been very easy to express the exact meaning desired.' "

In following the foregoing pronouncement, this court in effect held that the term "passenger elevator" would not be interpreted as meaning "passenger *type* elevator" because, if the insurance company intended such a limitation upon the term, it would have been very easy to express the exact meaning desired. The thing that distinguishes that case from the one now before us is that here the insurance company did the very thing that the Royal Union failed to do there. Here it definitely provided that, not only must the injury be received while operating a "passenger automobile" but also it must be "of the pleasure car type." Clearly, the Boles case does not decide the question which now confronts us.

The case of Lloyd v. Columbus Mut. Ins. Co., supra, is the only case cited to us, or which we have been able to find, where the insurance company took the precaution to limit its insuring clause to a pleasure car *type* of automobile. Accordingly, it is the only case directly in point. We are in accord with the holding there made. Here the parties have made their contract. We must see that it is enforced as made. The insurance coverage was limited definitely, specifically to injuries involving a passenger automobile "of the pleasure car type." The automobile involved herein is not of that type. The evidence is clear and undisputed. The court should have so held as a matter of law.

The judgment is—Reversed.

WENNERSTRUM, C. J., and MITCHELL, STIGER, GARFIELD, SAGER, and HALE, JJ., concur.

BLISS, J., takes no part.