SPECTOR, Judge
(dissenting):
I respectfully dissent from the majority’s judgment of reversal of the lower court’s summary judgment. In so concluding, I am not unaware of the myriad of cases correctly expressing the view that summary judgment will be withheld unless there is a clear showing that there is no genuine issue of material facts as shown by the pleadings, affidavits, depositions, etc. The correctness of the rule is universally acknowledged. However, the unanimity with which the Bench and Bar states the substance of the rule diminishes when the question is one of application of the rule to a given case. In my view, the question posed by the pleadings, affidavits, and deposition herein is not so much whether, vel non, the jeepster pickup truck is a private automobile of pleasure car design. Rather, the question is whether the policy provision hereinafter set out is so broad as to in-cude within its meaning the jeepster pickup truck here involved in view of the dual purpose or hybrid nature of the subject vehicle. My conclusion that the policy provision herein does afford coverage in the case at bar is, I believe, supported by the authorities and reasoning hereinafter following.
Incidentally, I feel somewhat compelled to state in defense of my brethren who render the court’s majority opinion herein reversing the lower court that it was I, not they, who had this case under consideration for the period since its submission on oral argument. Thus, I should like to observe that Judges Wigginton and Carroll in no way contributed to the length of time which has been consumed in the decisional process.
Appellant seeks reversal of an adverse summary judgment holding that a Jeepster Commando four-wheel-drive pickup truck is an automobile of pleasure car design within the meaning of an accidental death benefit clause in a life insurance policy.
The summary judgment being reviewed was rendered upon cross motions with each party submitting supporting affidavits. The parties also stipulated that appellee’s son died .during a hunting trip when a shotgun accidentally discharged while he was riding as a passenger in the vehicle in question. It was further agreed that the jeepster pickup truck had never been used for commercial purposes and was not being so used at the time of the accident. In his final judgment, the trial judge recited that the facts stipulated to in the affidavits, depositions, and documents contained in the record and court file were the only facts involved and that neither counsel had any further evidence to be submitted in proof of their respective claims other than that found in the record and court file. Also considered below was an exhibit introduced during the taking of the deposition of the dealer selling the vehicle to the decedent’s father who coincidentally was an employee of the dealer as a mechanic or body man. The exhibit was an advertising brochure describing the entire line of “Jeepster Commandos” made by the manufacturer and included a four-wheel-drive station wagon, four-wheel-drive roadster, and the four-wheel-drive pickup truck here in question. According to the brochure, the basic dimensions of all three models of the “Jeepster Commando”, such as overall length, 168.40 inches; wheelbase, 101 inches ; overall height, 64.2 inches, are the same.
The specific policy provision with which we are here concerned is designated in *706 the policy as a supplemental benefit. The schedule of supplemental benefits describes the coverage as a “non-occupational vehicle accident death benefit”. The separate paragraph of the policy which describes the said benefit is labeled in bold capital letters in the same verbiage, to wit, NONOCCUPATIONAL VEHICLE DEATH BENEFIT, and in material part reads:
“If an Accidental Death Benefit is payable * * *, and if the required due proof shows that the injury resulting in the accidental death was sustained by the Insured (a) while driving or riding in a private automobile of pleasure car design (including station wagon or similar body types) not in use for commercial or occupational purposes by the Insured * * *, the company will pay, in addition to all other benefits provided by the policy, a benefit equal to the face amount. * * *”
The principal point raised by appellant is . that the jeepster in question is not, as a matter of law, “a private automobile of pleasure car design (including station wagon or similar body types)” not in use for commercial purposes by the insured within the meaning of the policy. The issue is framed thusly since the lower court’s judgment was entered on summary proceedings.
In support of this question, appellant points to the fact that the manufacturer’s brochure labels the vehicle as a pickup truck as does the ownership title papers. The brochure describes the vehicle’s ability to haul cargo and appellant contends that a person riding in the cargo area (which is thirty-six inches wide between the rear wheel housing and 45.1 inches long with the tailgate raised) is cargo and not a passenger. Additionally, appellant distinguishes the other two models in the Jeep-ster Commando line from the “pickup truck” and takes the position that the station wagon and the roadster are within the policy but the pickup truck is not by reason of the absence of a conventional seating facility in the rear combined with the presence of a space designated as a cargo area.
While the question at hand has not heretofore been raised as it relates to a Jeep-ster Commando pickup truck in the reported cases of this jurisdiction, our sister court in American Fire and Casualty Company v. Williams, 226 So.2d 141, held that a pickup truck equipped with a camper body was a “private passenger automobile” which was defined in the involved policy as a “four-wheel private passenger, station wagon or jeep-type automobile”. In so holding, the court upheld a summary final judgment entered by the trial court to that effect. In the case sub judice, the policy includes among the contemplated vehicles “station wagons or similar body types”. A station wagon is a vehicle so designed as to carry passengers and light cargo. Such and similar body types are contemplated by appellant’s policy. The jeepster pickup truck in which appellee’s son was riding was clearly designed to carry both passengers and light cargo. Certainly, it was not designed to carry heavy or voluminous cargo. The picture in the manufacturer’s brochure shows the jeepster truck being used to take a few pieces of individual luggage to or from a rural railroad station. The same brochure pictures the jeepster roadster with its canvas top removed being used to haul building materials on a construction site, yet inherent in appellant's argument is the concession that the jeepster roadster is within the policy meaning.
There is no evidence that the deceased’s father acquired the vehicle for any business or commercial use. It is clear to us that he acquired it because it was ideally suited to his purpose of carrying both passengers and light cargo of the kind usually accompanying the pursuit of outdoor pleasures by hunters and fishermen.
In Aetna Life Inurance Co. of Hartford, Conn. v. Bidwell, 192 Tenn. 627, 241 S.W. 2d 595 (1951), the court took judicial notice that pickup trucks are commonly used in that state as a passenger vehicle for *707 pleasure purposes. Although the Bidwell case was tried to a jury, the willingness of the appellate court to take judicial notice of that fact negated the need for an eviden-tiary determination.
Appellant has cited Spence v. Washington National Ins. Co., 320 Ill.App. 149, SO N.E.2d 128 (1943), in support of the proposition that in determining whether a given vehicle is a “private passenger automobile of the pleasure type” within the meaning of a policy, it is immaterial whether the truck was used by the insured as a passenger vehicle and for pleasure. We do not find fault with that ruling. However, it is not controlling in the case at bar for the reason that the Spence court had before it a policy providing coverage while the insured was riding in “any private passenger type automobile of the exclusively pleasure type”. In the instant case, the policy coverage was not similarly limited by the inclusion of the word exclusively. In the Bidwell case, supra, the court considered Spence and pointed out the insurance company’s use of the expression “exclusively pleasure type” necessarily implied that they are passenger automobiles of the pleasure type as distinguished from those exclusively of such type.
A similar conclusion was reached in a well reasoned opinion in Gray v. North American Co. for Life, Accident and Health Insurance, 128 So.2d 223 (La.App. 1961), wherein the court considered a policy providing benefits if the insured met death while riding in a private automobile of the exclusively pleasure type. When said policy was in force, the insured met his death while a passenger in a pickup truck of less than 1,500 pounds capacity of an unspecified brand or model. Although the opinion of the court referred to an insurance rating manual on file with the state’s insurance commissioner which classified a motor vehicle with a pickup body as a private passenger automobile, the court held that the pickup there involved was not within the policy coverage because it was not of the exclusively pleasure type.
There can be no question that the jeep-ster pickup truck is suited or designed for both pleasure and light hauling of cargo mostly of the personal or noncommercial type. Much commercial use of the cargo carrying capabilities of such a vehicle occurs while the vehicle is awaiting an opportunity for the owner to use it for some form of outdoor recreational pleasure. Like the professional person’s seminar or convention held in some exotic watering mecca because of the income tax advantages of combining business with pleasure, so too has the burden of taxation had its effect on the design of automobile vehicles for both pleasure and at least colorable commercial purposes.
Since the policy in question failed to use the phrase “exclusively of pleasure design”, we can only conclude that appellant intended to extend coverage to all vehicles susceptible of carrying both passengers and light cargo by their design unless, of course, at the time ■ of the death it was being used commercially as further provided in the policy.
In reaching the foregoing conclusion, I have not overlooked the cases cited by appellant from other jurisdictions which reach a contrary ruling. A number of those cases are distinguishable by differences in the wording of the respective insurance policies such as the use of the delimiting word “exclusively” in the manner discussed above. In others, such as Dirst v. Aetna Life Ins. Co., 232 Iowa 910, 5 N.W. 2d 185 (1942), the court reversed a jury verdict holding that one-half ton Ford pickup truck with a stake body was a “passenger automobile of pleasure car type”. The court held that it should have been so held as a matter of law. In reaching its decision, the court pointed to an Iowa statute defining a motor truck as a vehicle primarily designed to carry livestock, merchandise, freight of any kind or seven persons as passengers. In Lloyd v. Columbus Mutual Life Ins. Co., 200 N.C. 722, 158 S. E. 386 (1931), the court held that whether a 1929 Model “A” one and a half ton truck *708 was a private automobile of the pleasure car type was a bald question of law. In LaFon v. Continental Casualty Co., 241 Mo.App. 802, 259 S.W.2d 425 (1953), the court held that a Studebaker one-half ton pickup truck, a vehicle materially larger than the jeepster in this case, was not “a private pleasure type automobile”. To like effect, Marshall v. Washington National Ins. Co., 246 N.C. 447, 98 S.E.2d 345 (1957), and Thomas v. Farm Bureau Mutual Ins. Co. of Idaho, 82 Idaho 314, 353 P.2d 776 (1960), involving a full one-half ton jeep pickup truck. In Pennell v. United Ins. Co., 150 Tex. 541, 243 S.W.2d 572 (1951), a jeep was held not to be within coverage extended to injuries sustained while riding a private automobile exclusively of the pleasure car type. In so holding, the court recognized the dual purpose character of the jeep and rested its decision on the word “exclusively” as in the Gray and Spence cases discussed herein earlier.
Many of the courts throughout the nation which have considered' the question now before us have recognized the dual purpose for which some vehicles have been designed. In American Fire and Casualty Co. v. Williams, supra, our own sister court described a pickup truck equipped with a camper body as a hybrid vehicle. I think the jeepster pickup here considered is also a hybrid vehicle, being designed neither exclusively for passenger purposes nor exclusively for cargo hauling purposes. In absence of specific language in the policy indicating an intent to exclude such hybrid or dual purpose vehicles from the coverage afforded, an ambiguity exists. Such ambiguity must, of course, be resolved against the insurer. The pickup truck with the camper body in the American Fire case, supra, was held to be within the coverage of that policy upon recognition of an ambiguity of the coverage provision of the policy. As authority, the court quoted from the trial judge’s order the following statement which I believe is both correct and dispositive of the coverage question in the case at bar:
The Florida law applicable to contracts of insurance is basically that where a contract of insurance is prepared and phrased by the insurer it is to be construed liberally in favor of the insured and strictly against the insurer where the meaning of the language is doubtful, uncertain or ambiguous. Firemen’s [Firemans] Fund Insurance Company v. Boyd [Fla.], 45 So.2d 499; Beasley v. Wolf [Fla.App.], 151 So.2d 679. It is doubtful to this Court whether a camper is specifically excluded from the pertinent provisions of the Plaintiff’s policy.”
Accordingly, the summary final judgment entered by the court below should be affirmed.