Blair and Peterson v. Johnson.

No. 25,134.

H. N. FILSON, J. L. GILMORE, H. J. STOCKMAN, and D. W. BLAIR
and L. M. PETERSON, Partners, etc., *Appellees*, v. O. M. JOHN-
SON, County Treasurer of the County of Neosho, and W. E.
REYNOLDS, as Sheriff, etc., *Appellants*.

### SYLLABUS BY THE COURT.

REGISTRATION AND LICENSING MOTOR VEHICLES—*Reconstructed Automobile
into a motor Truck Is Chargeable with and Must Pay License Fee Required
of Motor Trucks.* Under the statute relating to the registration and licensing
of motor vehicles (Laws, 1921, ch. 69), an automobile reconstructed into a
motor truck and used for transporting commodities, goods, merchandise,
produce or freight, belongs in the classification of motor trucks and the
owner thereof is chargeable with the license fee required to be paid on
such trucks.

Appeal from Neosho district court; SHELBY C. BROWN, judge. Opinion filed
January 12, 1924. Reversed.

*T. F. Morrison,* county attorney, for the appellants.

*James W. Finley, James A. Allen,* and *B. M. Dunham,* all of Chanute, for
the appellees.

*C. B. Griffith,* attorney-general, and *W. C. Ralston,* assistant attorney-gen-
eral, as *amici curiæ.*

The opinion of the court was delivered by

JOHNSTON, C. J.: The question presented in this appeal is the
license fee which should be charged and paid on motor vehicles
originally designed to carry persons for pleasure or business, which
have been reconstructed into vehicles similar to motor trucks and
used only for the transportation of groceries and other goods.

Under the statute the license fee payable on the vehicles of plain-
tiffs before reconstruction was $8, while the amount payable on
motor trucks similar to the reconstructed ones used by the plain-
tiffs was $15. The county treasurer was proceeding to enforce the
collection of the additional license imposed on motor trucks, and
this proceeding was brought by the plaintiffs to permanently enjoin
the treasurer from enforcing such collection, claiming that they
were only liable for fees on automobiles, that the vehicles in ques-
tion should be regarded as ordinary automobiles, and that the fees
for such vehicles had been fully paid. The court enjoined the
officers from collecting the motor truck license fees from the owners
of reconstructed cars.

Blair and Peterson v. Johnson.

Should the reconstructed vehicles be taxed as automobiles or as trucks? The statute provides:

"The term 'motor truck' shall mean a motor vehicle, commonly known as an auto truck, intended for the purpose of transporting any commodity, goods, merchandise, produce or freight, or passengers for hire." (Laws 1921, ch. 69, § 1.)

On one side it is contended that the word "intended" in the quoted section refers to the purpose of the manufacturer and that his intention and designation controls in fixing the classification of vehicles for the collection of license fees. It is insisted that if he intended it to be used as an automobile it must ever after be taxed as an automobile, notwithstanding the owner may reconstruct it into and use it as an ordinary truck. It is said that this view finds support in the proviso of section two of the act wherein it is provided:

"That for the purpose of this act the gross weight of all motor vehicles and the carrying capacity of all motor trucks shall be that specified and advertised by the manufacturer or maker thereof and the making of any false statement of a material fact in said application shall render the person making the same liable for the penalty provided by law for the crime of perjury."

Section three of the act provides among other things for the registration fee that shall be paid upon the various types of motor vehicles and that an automobile shall be taxed according to weight while motor trucks shall be taxed according to carrying capacity. It is argued that these provisions disclose the legislative purpose to have been that the intention and label of the manufacturer and not that of the owner who reconstructs and uses the changed car as a truck that is to control in the classification and taxing of motor vehicles.

We are unable to agree with this contention. They are designed for and put to different uses and the provision defining a motor truck in effect declares that the purpose or use of the vehicle shall determine the classification. If the owner rebuilds and converts an automobile originally designed and sold to be used as a pleasure car, into a motor truck which he uses to transport commodities, goods and merchandise, produce or freight, it is his intention and use that governs. The intended use is the one to which the owner devotes the reconstructed vehicle, and when an automobile is rebuilt and converted into a truck for the purpose of trucking, it passes into a new classification and is thereafter to be treated and taxed as a

motor truck. The intended purpose is best interpreted by the purpose for which it is rebuilt and used by the owner. If the intention of the manufacturer is to control, the manufacturer who changed and made the automobile into a truck doubtless intended it to be used for the purpose of transporting commodities, and according to plaintiff's theory his intention should be given effect and the vehicle classified as a motor truck. However, when automobiles are remade into and used as motor trucks for ordinary trucking purposes they can no longer be regarded as automobiles for taxing purposes. We cannot impute a purpose to the legislature to unjustly discriminate between owners of motor vehicles, charging those who used trucks reconstructed from automobiles a less license fee than is charged owners of like trucks originally designed to be so used. By section three of the act, motor vehicles used solely for carrying persons for pleasure or to places of business, a minimum fee of $8 is charged and in addition thereto 50 cents for each 100 pounds or gross fraction of such vehicles in excess of 2,000 pounds is required to be paid. As to motor trucks the minimum license fee is $15 and this is the charge where the carrying capacity of the truck is one ton or less and the fees are increased according to the increased carrying capacity or tonnage of the trucks. It certainly was not the purpose of the legislature that the owners of some trucks should be charged about twice as much in license fees as other owners of trucks of the same rate carrying capacity. We cannot attribute such an injustice to the legislature as would result from plaintiffs' interpretation. The legislature evidently had in mind the fact that a motor truck used in transporting commodities or one used in carrying passengers for hire would ordinarily wear and injure highways more than would automobiles which the owner used to drive to and from his business or on pleasure trips. It is said that if the label of the original manufacturer is not used the officers who collect the fees will be required to ascertain the use to which an owner is putting his vehicle and that this would be very difficult and lead to much confusion. It is the duty of the officers to ascertain whether the owners applying for registration of motor vehicles are correctly reporting the character of the vehicles for which a license is sought, and there can be no greater difficulty in ascertaining whether the vehicle is an, automobile or a motor truck.

The judgment of the district court is reversed.

Blair and Peterson v. Johnson.

HARVEY, J. (dissenting): The question to be decided is governed· by chapter 69 of the Laws of 1921, which in section 1 defines terms as used in the act and, so far as pertinent, reads:

"(A) The term 'motor vehicle' . . . shall include all vehicles propelled by any other power than muscular power, . . ."   (B) [defines the term "Motorcycle"].   "(C) The term 'motor truck" shall mean a motor vehicle commonly known as an auto truck, intended for the purpose of transporting any commodity, goods, merchandise, produce or freight; or passengers for hire."

"Section 2 requires the owner of a motor vehicle to make "application for registration . . . setting forth a brief description of the motor vehicle to be registered, including the name and make of such motor vehicle, engine number, year and model, style, horsepower, name and address of owner, gross weight stated in pounds, and in case of motor trucks the carrying capacity stated in pounds, . . . *Provided,* That for the purpose of this act the gross weight of all motor vehicles and the carrying capacity of all motor trucks *shall be that specified and advertised* by the manufacturer or maker thereof . . ."   (Italics ours.)

SEC. 3.   "All applications for the registration of motorcycles and motor vehicles other than motor trucks, except as otherwise provided, shall be accompanied by an annual license fee as follows: For motorcycles, five dollars; for motor vehicles,· other than motorcycles, used solely for the carrying of . persons for pleasure or business, a minimum fee of eight dollars, and in addition thereto fifty cents for each 100 pounds gross weight or major fraction thereof of such motor vehicles in excess of 2,000 pounds; for each electrically-propelled motor vehicle a fee of ten dollars ($10). All applications for the registration of motor trucks except as otherwise herein provided, shall be accompanied by an annual license fee as follows: For motor trucks having a rated carrying capacity of one ton or less, fifteen dollars ($15) ; . . ."

And for motor trucks having a greater "rated carrying capacity" the fees are larger, depending upon the rated carrying capacity of the motor truck.

It seems clear to me that the statute, read as a whole, and especially the proviso in section 2, leaves no room for doubt that the gross weight of motor vehicles other than motor trucks and the carrying capacity of all motor trucks shall be that specified and advertised by the manufacturer or maker thereof. Hence, it is not the intention of the user of the motor vehicle which determines its class, but what was intended by the original manufacturer.

If it be thought necessary to get away from the plain language of the statute and speculate upon what might have been in the minds of the legislators when the statute was passed we need only to look to the known history of the writing of this law. Prior to this statute

14—115 KAN.

each motor vehicle other than motorcycles required the payment of a straight $5 fee without regard to its class. (Laws 1919, ch. 88, § 2.) At the time and prior to the meeting of the legislature of 1921 there had been great agitation for the building of good roads and an effort to find some way to finance the same out of registration fees for automobiles as had been done in many of the states. The then secretary of state, who had charge of the automobile registration, procured copies of statutes from other states and corresponded extensively with officers having charge of the registration of automobiles in other states with reference to their statutes and practices, and when the legislature met he had this data at hand and had prepared a bill which was used as the basis for the law enacted. An examination of the statutes of other states at that time disclosed that there was a great variety in the classification of motor vehicles for registration and in the license fees charged. For example: the statute of Ohio (General Code, § 6290) defines motor vehicles much as our statute; "passenger car" as any motor vehicle designed and used for carrying not more than seven passengers; a "commercial car" as any motor vehicle designed and used for carrying merchandise or freight or for carrying more than seven passengers. The license fee for the passenger car is based upon the horsepower, which is determined by the A. L. A. M. (Association of Licensed Automobile Manufacturers) formula. The fee for commercial cars is the same as passenger cars plus 20 cents for each 100 pounds gross weight of vehicle and load. Fee for trailer is 20 cents per hundred gross weight of trailer and load. In determining that they take the manufacturer's rating for the load and add the actual weight of the vehicle. For steam driven motor vehicles the horsepower is measured by the rule recognized by the United States government, and for electrically driven motor vehicles the secretary of state must determine the horsepower. In New York (Comp. Laws, pp. 3611, 3615), the term "motor vehicle" is defined much as by our statute. "Omnibus" is defined as any motor vehicle used for the transportation of passengers for hire, and the license fee is based upon the seating capacity for passengers. For motor vehicles commonly known as "auto trucks," used for the transportation of goods, wares, and merchandise, the schedule of fees is based upon the combined weight of truck and carrying capacity and also that of trailers. For other motor vehicles the license fee is based upon the horsepower, which for gas driven vehicles is determined by the A. L. A. M. formula,

and for steam driven motor vehicles the fee is based upon the horse-power rating fixed or advertised by the manufacturers. If the motor vehicle is "equipped with other than pneumatic tires and used for commercial purposes" the fee is increased depending upon the weight of the vehicle. Chauffeurs are required to be licensed. In Connecticut (Gen. Stat. 1915, §§ 1523-1536), there is a general definition of motor vehicles, and it is provided, "Commercial motor vehicles shall include any vehicle designed or used for the transportation of merchandise or freight." The commission handling the registration determines the carrying capacity of commercial motor vehicles regardless of the horsepower, and for other motor vehicles the fee is based upon the horsepower as determined by the A. L. A. M. formula. In Arkansas (Laws 1921, act 494), the registration fee for automobiles is 25 cents per horsepower, plus 25 cents per hundred weight as shown by the "National Automobile Chamber of Commerce," and for motor trucks was based upon ton capacity, as was also the fee for trailers. Minnesota taxed automobiles at the list price each year for the first three years, at 75 per cent of the list price for the next two years, and at 50 per cent of the list price thereafter. (*Dohs v. Holm*, 152 Minn. 529.)

Many other statutes might be cited showing other classifications, and other methods of determining the class to which a motor vehicle belongs. In those states where the registration officers were required to determine the weight, the horsepower, or the carrying capacity of motor vehicles or certain classes of them, much confusion had arisen, necessitating the purchase of special equipment and the employment of mechanical and electrical experts. All this data was turned over to the appropriate committees of the Senate and House, there thoroughly considered, and the measure was introduced in the Senate as a committee bill, and passed both houses, after having been amended as to the amount of registration fee on trucks and in other minor respects (S. J. 251, 354, 405; H. J. 442, 466, 470). The objects to be attained by the bill were, 1st, increased registration fees, which naturally met opposition; 2d, certainty of classification, in order (*a*) that the owner of any motor vehicle might know definitely the amount of the registration fee he would be required to pay, and (*b*) that the registration officers could handle the matter with certainty, as clerical work, without the necessity of a mechanical department. To accomplish this second purpose there was incorporated in section 2 of the law the following provision:

"That for the purposes of this act the gross weight of all motor vehicles and the carrying capacity of all motor trucks shall be that specified and advertised by the manufacturer or maker thereof."

Can there be any mistake in the meaning of this language? Immediately after the enactment of the law the secretary of state obtained by correspondence from the manufacturers the gross weight of all motor vehicles and the carrying capacity of all motor trucks manufactured by them, compiled that data and furnished it to the county treasurers throughout the state as their guide in determining the registration fee to be paid on any automobile or motor truck. That is in accord with the wording of the statute, and has been followed without question through three registration terms.