ZEB V. KIRK AND VIRGINIA SMITH YOUNG, CO-EXECUTORS OF JASON B. STRANGE, DECEASED, v. NATIONWIDE MUTUAL INSURANCE COMPANY.

(Filed 10 May, 1961.)

1. Insurance §§ 3, 46—

In an action on an insurance contract, the burden is upon plaintiff to show coverage under the policy and upon insurer to prove an asserted defense under the exclusion clauses, but when plaintiff's own evidence establishes that his claim falls within a clause excluding liability, nonsuit is proper.

2. Insurance § 3—

An insurance contract is to be construed in accordance with the intention of the parties and must be enforced according to the terms of the agreement.

3. Same—

Where a term is defined in a contract of insurance, such definition will be applied to the term wherever used in the contract, including coverage and exclusion clauses, unless made inapplicable by the express language of the contract or unless inconsistent with and repugnant to the purpose and intent of the particular clause.

**4. Same—**

An endorsement is an integral part of the policy contract.

**5. Insurance § 47— Vehicle held "commercial automobile" excluded from coverage under indemnity endorsement.**

The policy in suit defined "commercial automobile" as one used principally in the business occupation of the named insured, including loading and unloading thereof, and provided coverage for loss or damage to a designated automobile, owned by insured, and for personal and property damage liability, and medical payments. By endorsement, for a small premium, it provided indemnity for injury or death of insured resulting from an automobile accident, but excluded coverage for injury or death arising while insured was engaged in duties incident to the operating, loading, or unloading of a commercial automobile. *Held:* Insurer cannot be held liable for death of the named insured resulting while he was assisting in loading, in the course of insured's employment, a vehicle of insured's employer used in the performance of the employer's business.

APPEAL by defendant from *Phillips, J.,* September 1960 Civil Term of DAVIDSON.

Action by plaintiffs, Co-Executors of Jason B. Strange, deceased, to recover, on account of testate's accidental death, $5,000 death benefit under the terms of an insurance policy issued by defendant insurance company.

There was verdict for plaintiffs. Judgment was entered accordingly. Defendant appeals.

*Stoner & Wilson and T. H. Suddarth, Jr., for plaintiffs.*
*Walser & Brinkley for defendant.*

MOORE, J. Jason B. Strange was employed by the Southern Railway Company in the car department. He worked in and out of the Spencer shops. On 26 November 1958 a railway car ran a "hot box" at Hickory. The car had been "jacked up" and the wheels changed. Strange and one Peacock, in the course of their employment, were sent to return the jacks to the shops. For this purpose they used a specially equipped 2½ ton Chevrolet maintenance truck owned and furnished by the Railway Company. They drove the truck to the location and prepared to load the jacks.

The truck had been "stripped" down, leaving of the original vehicle only the cab and chassis; and a special body was built on the back. The truck had one set of dual wheels on the rear, with flat steel fenders over, and extending three inches beyond, the wheels. A hydraulic boom, 16 to 18 feet long, was mounted on and attached to the body. The boom was powered by a dynamo motor. Levers and two crane wheels for controlling the boom were mounted to the rear of the cab. The

body had boxes, sections and compartments for storing and transporting tools, accessories, equipment, wood boards and wedges, chains, cables, hammers, train wheels, railroad jacks, and torches. There was a special place on the right side of the body for loading and carrying the jacks.

The jack which Strange and Peacock began loading first was three feet long and weighed about 250 pounds. A steel cable ran along the boom. At the end of the cable was a steel hook. Strange attached the hook to the jack. Peacock was at the controls to manipulate the boom. Strange remained on the ground to assist in guiding the jack to the proper position on the truck. To the right of and above the truck were high voltage electric transmission wires. In raising the jack, the boom and steel cable came into contact with the wires and Strange was electrocuted.

Peacock recounts the occurrence as follows: "He (Strange) was standing between the right rear wheels and the wires. . . . I could not see him but I would say he was approximately three or four feet from the truck. . . . The last thing I heard Strange say . . . he had a habit of say(ing), 'hey', and that was the last thing I heard. . . . I then got off the truck and went around and saw him lying on the ground . . . . I found his body lying at the right rear wheel. The closest part of his body to the wheel I would say was approximately six inches. His head was at the wheel and the body extended out toward the wire. . . . He was unconscious but breathing. . . . The jack that we had swung around was hanging up over his body approximately three feet from the ground."

Just prior to the accident the part of Strange's body nearest to the truck was his left hand. After the accident there were "a few black spots on his left hand . . . on the inside of the fingers near the end of the fingers." The truck was charged with electricity. Upon arrival at the hospital Strange was pronounced dead.

On 8 June 1958 defendant insurance company issued to Jason B. Strange and Southern Railway Company "Comprehensive Family Liability and Automobile Combination Policy No. 61-900-130. Endorsement 409B-1 was attached to and a part of the policy. The endorsement names Jason B. Strange as insured. The principal sum for death indemnity is $5,000. The pertinent portions of the endorsement are as follows:

"The Company agrees with the named insured, in consideration of the payment of the premium and in reliance upon the declarations and subject to the limits of liability, exclusions, conditions and other terms of this endorsement and of the policy . . . . To pay the principal sum . . . in the event of the death of the Insured which shall re-

sult directly and independently of all other causes from bodily injury caused by accident and sustained by the insured while in or upon or while entering into or alighting from, or through being struck by, an automobile . . . .

"EXCLUSIONS. This insurance does not apply . . . to bodily injury or death sustained in the course of his occupation by any person while engaged . . . in duties incident to the operation, loading or unloading of, or as an assistant on, a public or livery conveyance or commercial automobile. . . ."

The premium had been fully paid and the insurance was in force at the time of insured's death. The annual premium on the Death Indemnity feature of the Endorsement was $1.80. Plaintiffs in apt time filed with defendant proof of loss and demanded payment of the principal sum. Defendant denied liability under the terms of the policy and this action was instituted.

At the trial defendant offered no evidence and moved for nonsuit at the close of plaintiffs' evidence. The motion was overruled and defendant excepted. The question for decision on this appeal is whether or not the court erred in refusing to nonsuit the action.

It is our opinion, and we so hold, that the trial court erred in denying defendant's motion for nonsuit.

In cases involving insurance contracts, the burden is on him who claims benefits thereunder to offer evidence which brings him *prima facie* within the coverage of the policy, and upon such showing the burden is upon the insurer to prove defenses under the exclusion clauses. *Fallins v. Insurance Co.*, 247 N.C. 72, 100 S.E. 2d 214. "When the plaintiff fails to show coverage under the insurance clause of a policy, nonsuit is proper. If the plaintiff's evidence makes out a case of coverage and at the same time establishes the defense that the particular injury is excluded from coverage, nonsuit is likewise proper." *Slaughter v. Insurance Co.*, 250 N.C. 265, 108 S.E. 2d 438.

In the instant case, it is unnecessary to decide whether or not plaintiffs have made out a case of coverage under the insuring clause. It must be understood that we express no opinion on this question. Plaintiffs' evidence definitely shows that the injury to and death of Jason B. Strange, under the terms of the Exclusions clause, is excluded from coverage.

In their brief plaintiffs make the following admissions: "In all candor it must be conceded that the death of plaintiffs' intestate was sustained in the course of his occupation and while he was engaged in the duties incident to the loading the maintenance truck. It is admitted that the truck in question is under the holdings of this and other jurisdictions an automobile. The Death Indemnity Endorsement

409B-1 defines automobile as 'a land motor vehicle or trailer not operated on rails or crawlertreads . . . .' Thus the sole question is whether the heavy maintenance truck which plaintiffs' intestate (testate) was helping to load is 'commercial automobile.' "

Plaintiffs very properly conceded that the truck in question is an "automobile" according to the definition contained in the policy itself, and under the decisions of this Court. *Seaford v. Insurance Co.*, 253 N.C. 719, 117 S.E. 2d 733. The sole question for decision is: Is it a "commercial automobile"?

An insurance policy is a contract between the parties, and the intention of the parties is the controlling guide in its interpretation. *Gaulden v. Insurance Co.*, 246 N.C. 378, 384, 98 S.E. 2d 355. It is to be construed and enforced according to its terms. *Haneline v. Casket Co.*, 238 N.C. 127, 129, 76 S.E. 2d 372. When the policy expressly defines such terms as "commercial automobile" or "commercial use" in reference to the coverage in question, the policy definition must be accepted and applied. *Commercial Standard Insurance Co. v. Blankenship*, 134 F. 2d 784 (6th Cir. 1943); *American Casualty Co. v. Fisher*, 23 S.E. 2d 395 (Ga. 1942); *Manthey v. American Automobile Insurance Co.*, 127 Conn. 516, 18 A. 2d 397 (1941); *Maryland Casualty Co. v. Tighe*, 115 F. 2d 297 (9th Cir. 1940). Ordinarily the same words and phrases used in different clauses of an insurance contract will be understood to have been used in the same sense. *Willingham v. Life & Casualty Co.*, 216 F. 2d 226, 47 A.L.R. 2d 1017. Thus when a term, such as "commercial automobile," is defined in an insurance policy, though not specifically in reference to the coverage in question, the definition will be applied to all clauses of the contract, including the coverage in controversy, unless it is made inapplicable by the express language of the contract, or is inconsistent with and repugnant to the provisions of the coverage under consideration. *Lancaster v. Insurance Co.*, 153 N.C. 285, 288, 69 S.E. 214.

The main policy in the instant case is denominated "Comprehensive Family Liability and Automobile Combination Policy." "Jason Burgess Strange & Southern Railway" are named insured. The main body of the policy provides five coverages: (B) Comprehensive — Loss or damage to automobile; (D-1) Deductible collision; (E) Property Damage Liability; (F) Bodily Injury Liability; (G) Automobile Medical Payments. The total premium is $111. The automobile described is a 1955 Cadillac 2-door coupe. The specified "use of automobile" is "Pleasure and Business" (not "Commercial"). There are the following definitions of automobiles as to use: "(a) 'Pleasure and Business' means personal, pleasure, family and business use. (b) 'Commercial' means that the automobile is used principally in the

KIRK *v.* INSURANCE CO.

business occupation of the named insured . . . including occasional use for personal, pleasure, family and other business purposes. Use of the automobile for the purposes stated includes the loading and unloading thereof."

The coverage involved here is set out in Endorsement 409B-1, attached to the policy above referred to. For a premium of $1.80 it provides a Death Indemnity of $5,000 should Jason B. Strange die as a result of accidental injury sustained while in or upon, or while entering into or alighting from, or through being struck by, an automobile. However, the Death Indemnity is not payable if the fatal injury is "sustained in the course of his employment . . . in duties incident to the operation, loading or unloading of, or as an assistant on, a . . . *commercial automobile.*" (Emphasis added). The language of the endorsement does not define "commercial automobile" as therein used, nor does it exclude the term from the definition given in the main portion of the policy. The endorsement is an integral part of the policy. *Lancaster v. Insurance Co., supra.*

The purpose of the policy is to protect insured from financial loss and liability in the use of the Cadillac automobile for "pleasure and business," and to provide indemnity for the death of Jason B. Strange resulting from accidental injury sustained, under specified circumstances, in the use of a "pleasure and business" automobile. The endorsement provides limited coverage, as indeed it must for a premium of $1.80. *Marshall v. Insurance Co.,* 246 N.C. 447, 448, 98 S.E. 2d 345; *Taft v. Casualty Co.,* 211 N.C. 507, 513, 191 S.E. 10. It is clearly not intended that the policy shall cover fatal injury by accident while insured is operating, an assistant on, loading or unloading a commercial automobile in the course of his employment.

The truck in question was used principally in the business of Southern Railway Co., and, therefore, a "commercial automobile" according to the policy definition. This application of the policy definition of "commercial automobile" is consistent with the general intent, meaning and express language of the policy.

The policy definition thus applied is in harmony with court decisions as to the meaning of "commercial automobile." Some authorities classify automobiles as "commercial" by reason of type and structure, others with reference to use. Most cases employ both approaches.

"The test is the character of the use of the vehicle taken into consideration with the form of the car." *Zabriskie v. Law,* 194 N.Y.S. 626 (1922). "An automobile truck is a vehicle for the conveyance for commercial purposes over ordinary roads, and the average type of that kind of vehicle is especially designed both in its propelling mechanism and in its body construction for that function." *American-La-*

*France Fire Engine Co., Inc. v. Riordan,* 6 F. 2d 964 (2d Cir. 1925). "The words 'commercial use' connote use in business in which one is engaged for profit." *Lintern v. Zentz,* 327 Mich. 595, 42 N.W. 2d 753, 18 A.L.R. 2d 713 (1950). "In *State v. D. L. & W. R. Co.,* 30 N.J. Law 473, it was held: 'By the term "commerce," is meant not traffic only, but every species of commercial intercourse, every communication, by land or by water, foreign or domestic, external and internal' . . . transportation is as much a part of commerce as are the goods transported." *Conecuh County v. Simmons,* 95 S. 488 (Ala. 1922).

*Lloyd v. Insurance Co.,* 200 N.C. 722, 158 S.E. 386, involved a policy provision for indemnity for fatal injury sustained while riding in or driving a pleasure type automobile. The vehicle there in question was a 1½ ton Ford truck used principally on a milk route. This Court concluded: "The word 'type' used in the policy implies the idea of classification . . . the truck in which plaintiff's intestate was riding at the time of his death was by intention, use and construction a *commercial* vehicle and so classed by the North Carolina statute." (Emphasis added). Accord: *Marshall v. Insurance Co., supra.*

A passenger type automobile converted into a vehicle for the purpose of delivering groceries and other goods was held to be a truck. *Filson v. Johnson,* 222 P. 742 (Kan. 1924). A truck and semi-trailer designed for hauling oil field equipment was held to be a commercial vehicle, and the court said: ". . . 'Commercial vehicles' is that type or make of vehicle designed for and adapted to commercial purposes regardless of the use to which said vehicle is put at any particular time." *Corbett-Barbour Drilling Co. v. Hanna,* 222 P. 2d 376 (Okla. 1950).

The vehicle plaintiffs' testate was loading at the time of his fatal injury was a "commercial automobile" according to the policy definition, judicial decisions, and the common understanding of the term. Southern Railway was engaged in commerce for profit, the vehicle was used in its business exclusively, and it was a truck type motor vehicle designed to transport equipment and materials.

The judgment below is vacated and the ruling on the nonsuit motion is

Reversed.