SECURITY INSURANCE GROUP OF HARTFORD, A CORPORATION v. LUCILLE CROOM PARKER AND NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY

No. 75

(Filed 2 March 1976)

Insurance § 90— automobile liability policies — non-owned vehicle — business or occupation exclusion — private passenger automobile exception

Where, at the time of an accident, the insured driver was operating a truck heavily loaded with corn she was delivering to the mill from a farm which she and her husband operated, and the truck had been loaned to her husband by another, operation of the truck was excluded from non-owned automobile coverage of "Combination" and "Family" automobile policies issued to the driver and her husband by the "business or occupation" exclusion thereto since (1) the hauling of

corn was a business or occupation within the meaning of the exclusion whether or not it was the principal or primary business of the insured and (2) a truck capable of hauling heavy loads of corn could not as a matter of law be a "private passenger automobile" within the meaning of that exception to the business or occupation exclusion.

ON *certiorari* to review the decision of the Court of Appeals, reported in 24 N.C. App. 452, 210 S.E. 2d 741 (1975), affirming the judgment of *Martin, J.,* entered at the May 13, 1974 Session of RUTHERFORD Superior Court.

This case was docketed and argued as No. 123 at the Spring Term 1975.

These background facts are not in dispute: On November 17, 1966, in Rutherford County at about 4:00 p.m., Robert Yelton, a minor, was riding as a guest passenger in a Ford automobile owned by Marjorie Dobbins but being operated by her son, Gregory Dobbins. The Dobbins' car was traveling north on U. S. Highway 74 when it ran off the road and wrecked causing injury to both Gregory Dobbins and Robert Yelton and damage to the car. According to Dobbins and Yelton a 1961 International truck being operated by Lucille Parker and owned by J. D. Roland, failed to stop at a stop sign on a street intersecting with U. S. Highway 74, entered onto the highway directly in front of the Dobbins' automobile and caused Gregory Dobbins to lose control of the car. There was no contact between the car and the International truck. Lucille Parker has no recollection of the incident.

On May 28, 1969, Robert Yelton filed suit against Marjorie and Gregory Dobbins, Lucille Parker and J. D. Roland alleging that he was injured by their joint negligence. The complaint was later amended to add and state a claim against Floyd E. Parker, husband of Lucille Parker, as an additional defendant. Defendants Dobbins filed cross-action for Gregory's personal injury and Majorie's property damage against Lucille Parker and J. D. Roland. This action was submitted to a jury which found: (1) Robert Yelton was injured by the negligence of Gregory Dobbins and Lucille Parker; (2) Lucille Parker was not the agent of J. D. Roland; and (3) damages in favor of Robert Yelton in the sum of $20,000. Judgment was entered accordingly and the Court of Appeals, *Yelton v. Dobbins,* 6 N.C. App. 483, 170 S.E. 2d 552 (1969), found no error in the trial.

At the time of the accident Security Insurance Group of Hartford (Security), plaintiff here, was the automobile liability insurer for the Dobbins. North Carolina Farm Bureau Mutual Insurance Company (Mutual) was the automobile liability insurer for J. D. Roland with policy limits of $5,000 for each injury. Mutual also insured Floyd and Lucille Parker under the provisions of a "Combination Automobile Policy" and a "Family Automobile Policy" the terms of which give rise to the issues in this case and will hereinafter be more fully set out.

On the Yelton judgment Mutual, because of its insuring agreement *with Roland,* paid its policy limits of $5,000 on behalf of Lucille Parker who, all the evidence showed, was operating Roland's truck with his permission. Security, on behalf of the Dobbins, paid the balance due on the judgment. Through proper notation on the judgment pursuant to the Uniform Contribution Among Tort-Feasors Act, N. C. Gen. Stat. 1B-1 *et seq.,* particularly § 1B-7, Security preserved its right of contribution and the lien of the judgment to the extent of $5,000 against Lucille Parker. Execution against Lucille Parker for $5,000 plus interest and costs was returned unsatisfied.

On June 18, 1970, Security filed this action seeking to enforce its right of contribution against Lucille Parker. It alleged that Mutual provided additional liability coverage pursuant to its "Family Automobile Policy" and its "Combination Automobile Policy" issued to the Parkers. These policies are referred to in the record as "Policy No. 111790" apparently because they were issued on the basis of certain declarations which were so designated.

This case was heard without a jury by Judge Harry C. Martin. The evidence of the plaintiff consisted of the pleadings, judgment, notation on the judgment, and the opinion of the Court of Appeals in Yelton's lawsuit against Dobbins, Parker and Roland together with Mutual's "Policy No. 111790." In all of these pleadings the vehicle operated by Lucille Parker was referred to consistently as an "International truck," once as a "loaded truck," and once as "hauling a very heavy load." One of these pleadings which plaintiff introduced into evidence was the answer of Floyd Parker to the amended complaint in Yelton's suit in which Parker admitted that, "Lucille Croom Parker at the time of the accident complained of, was delivering corn to the Yelton Milling Company at Rutherfordton, N. C." There is, furthermore, this recitation of facts in the Court of Appeals'

opinion rendered in the Yelton suit and offered here by the plaintiff:

> Parker denied negligence and offered evidence which, in substance, tended to show that she was hauling shelled corn on the date in question. She was driving a 1961 International truck with a red cab and black side boards. In traveling from her farm in Old Fort to Yelton Milling Company where she was carrying the corn, she traversed U. S. Highway #74 Bypass . . . .

The defendant's evidence consisted of the testimony of Lucille Parker. She testified that on the date of the accident she was operating a 1961 International truck owned by J. D. Roland. Roland had loaned the truck to her husband in order to haul grain. She was in the process of hauling grain from Old Fort, where she and her husband leased a farm, to the Yelton Milling Company. She testified:

> My husband and I, on November 17, 1966, were engaged in the business of farming, the farm house and property was in Old Fort, but we leased and rented property other than on the farm. I was hauling corn for my husband and me on November 17, 1966 to the Yelton Mill and the particular load was coming from a field we had rented from George Burleson on Highway 221 North, in Marion, McDowell County. When I say, "we had rented," I mean my husband, and I, Floyd Parker.

> \* \* \*

> As to how I happened to be operating Mr. Roland's truck on November 17, 1966, he let my husband borrow it to haul the grain to the mill . . . . My husband and I engaged in no business other than farming in November, 1966.

> As to whether my husband [and] I have any other occupation other than the business of farming in 1966, I don't recall that far back. My husband had worked part-time some in carpenter work and farmed too, but I don't recall the particular year.

> On November 17, 1966, when this wreck happened, my husband was not engaged in any other occupation on that day. As to whether I was engaged in any other occupation on that day than farming, just being a housewife was all.

* * *

At all times before I heard about the accident having happened and while I was operating it, the Roland truck was loaded with corn, I guess it was. From my house to Yelton Mills the truck I was operating was loaded with about three hundred bushels of corn.

On cross-examination she was asked about her testimony in a deposition taken on January 3, 1969. She admitted that when asked on deposition about her husband's occupation she answered that he did a number of things including construction, welding and farming, and that in *January, 1969, at the time of the deposition,* she was doing the farming since Mr. Parker was working in construction in Florida. She admitted that when asked whether or not she and her husband were in the farming business as partners on November 17, 1966, her answer was "No" in the sense that a husband and wife are not, in her view, partners although they do "share and share alike, I believe." She said:

> In addition to whatever I did about farming, I was a housewife. I helped my husband as a housewife in farming and my household duties too. I never got paid anything for hauling this grain. I did it to help my husband. I was a housewife helping my husband.

On redirect examination Mrs. Parker testified that she and her husband did share in the income or profit from the farming operation. On recross-examination she said:

> I didn't get paid for hauling the corn. I didn't get paid by the hour or load or anything. I testified I was a housewife helping my husband. I did anything I could to help with the farming operation too.

She also testified that on November 17, 1966, she and her husband owned a one and one-half ton, 1964 Chevrolet truck; a one-ton, 1960 Ford truck; and a 1962 Ford pick-up.

In the declarations used to obtain Mutual's "Combination" and "Family" automobile policies, Floyd E. Parker is named as the insured. The declarations list two vehicles, a 1964 "Chevrolet Stake ½" and a 1964 "Ford Stake 100" as "commercial" vehicles covered by the "Combination Automobile Policy." The declarations further list a 1962 Ford "pick-up ½" as a "busi-

ness and pleasure" vehicle covered by the "Family Automobile Policy." Both policies provide liability coverage for the operation of automobiles not owned by the Parkers. The "Combination" policy reads in pertinent part:

V. Use of Other Automobiles.

If the named insured . . . owns a private passenger automobile covered by this policy . . . [liability coverage] applies with respect to any other automobile subject to the following provisions:

\*          \*          \*

(d) This insuring agreement does not apply:

\*          \*          \*

(3) . . . to any automobile while used in a business or occupation of such named insured or spouse except a private passenger automobile . . . .

"A private passenger automobile" is defined in this policy as "a private passenger, station wagon or jeep type automobile, and . . . any automobile the purposes of use of which are stated in the declarations as 'pleasure and business'."

The "Family Automobile Policy" also insures against liability "arising out of the ownership, maintenance or use of the owned automobile *or any non-owned automobile.*" (Emphasis added.) Excluded, however, from such coverage is:

a non-owned automobile while maintained or used by any person while such person is employed or otherwise engaged in

(1) the automobile business of the insured . . . .

(2) any other business or occupation of the insured, but this exclusion . . . does not apply to a private passenger automobile operated . . . by the named insured . . . .

"Private passenger automobile" is defined in this policy "as a four wheel private passenger, station wagon or jeep type automobile." "Named insured" is defined as the person named in the declarations and the spouse of such person.

With this evidence before him Judge Harry Martin found in pertinent part as follows:

8. That at the day and time of the accident complained of in the action brought by Roland D. Yelton, the

defendant Lucille Croom Parker was driving . . . a non-owned automobile.

9. That at the time of the accident complained of, the business and occupation of Lucille Croom Parker was that of housewife; that at the time of the accident complained of Floyd Parker, the husband of Lucille Croom Parker, was employed in the construction industry and his business and occupation was that of welder; that, at the time of the accident complained of, neither Floyd Parker nor Lucille Croom Parker was engaged in *the* business or occupation of farming, of growing or hauling corn. (Emphasis added.)

\* \* \*

13. That, in regards to the "Combination Automobile Policy" the Court finds that Floyd and Lucille Parker did "own a private passenger automobile covered by this policy."

\* \* \*

15. That Lucille Croom Parker did not recall for what purposes J. D. Roland used his motor vehicle which Lucille Croom Parker was driving on the day of the accident complained of, and that the Court finds that the defendants did not prove that the motor vehicle of J. D. Roland, which was being driven by Lucille Croom Parker at the time of the accident complained of, was not a private passenger automobile.

Judge Martin concluded: "That the plaintiff . . . [has proved] a prima facie case for coverage under both the 'Combination Automobile Policy' and the 'Family Automobile Policy' both . . . being part and parcel of [Mutual's] Policy 111790; that the defendants . . . have failed to carry the burden of proving any exclusion to the aforesaid policy." He ordered that plaintiff recover of the defendants the sum of $5302.50 plus interest.

Both defendants filed exceptions to each of the foregoing findings and conclusions and gave notice of appeal to the Court of Appeals. Only defendant Mutual, however, perfected its appeal by filing appropriate assignments of error based in part upon the exceptions noted. The Court of Appeals affirmed, remarking:

We have read the narration of [Lucille Parker's] testimony carefully and with interest. Whether we would find the

facts differently from those found by the trial judge is not the question. The trial judge had the opportunity to listen to and view the witness. These opportunities, like those afforded a jury, are essential to a determination of the weight and credit ·to be given to the testimony. A reviewing court has only the cold record. Here the defendant had the burden to satisfy the trial judge by the greater weight of the evidence that the loss came within the policy exclusion. This it failed to do, and the trial judge found in favor of coverage. If, upon this same evidence, a jury, under correct instructions, had answered the issue as did the trial judge, should the verdict be upset? We think not. 24 N.C. App. at 454, 210 S.E. 2d at 742.

We allowed defendant Mutual's petition for further review.

*Morris, Golding, Blue & Phillips, by William C. Morris, Jr., for defendant appellant.*

*Hamrick, Bowen & Nanney, by Fred D. Hamrick, Jr., and Louis W. Nanney, Jr., for plaintiff appellee.*

EXUM, Justice.

The Court of Appeals erred in affirming the judgment of the trial court.

Whether Mutual's "Combination" and "Family" policies are construed as separate policies or a single policy of insurance, plaintiff has made out a prima facie case of coverage under the "Family" insuring agreement which provides insurance against liability "arising out of the . . . use of . . . any non-owned automobile." Defendant Mutual in its brief and on oral argument concedes that the truck being operated by Lucille Parker was a "non-owned automobile" as that term is used in the insuring agreement. *Seaford v. Insurance Co.,* 253 N.C. 719, 117 S.E. 2d 733 (1961), supports this concession. Since, however, extended coverage for non-owned vehicles in the "Combination" insuring agreement is provided only if the insured "owns a private passenger automobile covered by *this policy*" (emphasis added), existence of such coverage depends upon whether the words "this policy" refer only to the "Combination" coverages or to both the "Combination" and "Family" coverages.

We need not decide this question. Assuming, *arguendo*, there is coverage under both insuring agreements, the exclusions from coverage, while not identical, are essentially the same in both. Extended coverage for a non-owned automobile is excluded in both the "Combination" and "Family" agreements if the "automobile" is being used at the time in question in *a*, or *any*, business or occupation of either Floyd or Lucille Parker unless the vehicle being so used is a "private passenger automobile" as that term is defined in the policies.

The question, therefore, is whether there is legal error in the trial court's conclusion that defendants failed to prove, the burden being upon them to do so, *Kirk v. Insurance Co.*, 254 N.C. 651, 119 S.E. 2d 645 (1961), the "business or occupation" exclusion from non-owned automobile coverage. In our opinion there is. The conclusion is based upon Findings 9 and 15, which, for reasons hereinafter stated, must be set aside. Both of these findings seem to be based upon a misapprehension of applicable law. Facts so found "will be set aside on the theory that the evidence should be considered in its true legal light." *Helms v. Rea*, 282 N.C. 610, 620, 194 S.E. 2d 1, 8 (1973), and cases cited. Finding 9, moreover, is not supported by any evidence and must be set aside on that ground alone.

The only evidence pertaining to Finding 9 came from the testimony of Lucille Parker. She testified, quite clearly, that at the time of the accident she and her husband "were engaged in the business of farming . . . in no business other than farming"; her "husband was not engaged in any other occupation"; and other than farming she was engaged in being a housewife. She testified that *at other times* her husband had done a number of other things including construction and welding and that in January, 1969, *at the time of her deposition* he was working in construction in Florida. The trial court's finding that he was so employed at the time of the accident is apparently based on a misunderstanding of Lucille Parker's testimony on cross-examination.

Finding 9 also indicates that the trial court ignored plaintiff's own evidence which was to the effect that Lucille Parker at the time of the accident was driving a truck heavily loaded with corn which she was delivering to the Yelton Milling Company at Rutherfordton. It seems obvious that one hauling a heavy load of corn does not do so for the pleasure of it. Such a venture must be, it seems to us, in connection with some busi-

ness enterprise. Thus when plaintiff rested its case the only question remaining relative to the "business or occupation" exclusion, leaving aside for the moment the exception to that exclusion, was whether hauling corn was *a,* or *any,* business or occupation of either Floyd or Lucille Parker.

In Finding 9 the trial court seems to have assumed that the "business or occupation" exclusion is satisfied only if the business engaged in was *the principal, the primary,* or *the only* business of the insured. He seems to have found that since Lucille Parker was primarily a housewife and Floyd Parker primarily in the construction business neither were or could be engaged in the business of farming or growing or hauling corn within the meaning of the exclusion.

The "business or occupation" exclusion, however, does not refer necessarily to the principal or primary business or occupation of the insured. In *Seaford v. Insurance Company, supra,* the plaintiff, a textile worker, was at the time in question operating a tractor-trailer truck on a one-time trip for the benefit of his employer in the textile business. He sought to establish coverage under "non-owned automobile" provisions of a policy similar to those here considered. In affirming a judgment on the pleadings for defendant insurance company we held that because of the "business or occupation" exclusion there was no coverage. We said, 253 N.C. at 724, 117 S.E. 2d at 736-737:

> In *Allstate Ins. Co. v. Hoffman,* 21 Ill. App. 2d 314, 158 N.E. 2d 428, where the Court there had to pass on the identical question here presented, it is said: "It is not uncommon for an insured to have a business in addition to his regular and customary occupation which he may pursue primarily or even wholly for purposes other than pecuniary gain; but such collateral business would nonetheless constitute a business or an occupation while so pursued. Since the policy contains no restrictive provisions as to the business or profession of the insured, it would seem that coverage or non-coverage is to be determined by the terms and provisions of the policy and not by reference to the particular business or occupation of the insured described in the policy." Also to the same effect are *Dickey v. Fire & Life Assur. Corp.,* 328 Pa. 541, 195 A. 875; *Voelker v. Indemnity Co.,* D.C.N.D. Ill., 172 F. Supp. 306, affirmed 260 F. 2d 275 (7th Cir.).

The conclusion is that the insurance company's position is sound and supported by authority, and even though the insured had other employment upon which he depended primarily for his livelihood, the tractor-trailer was being used in "business or occupation" while the plaintiff was on the trip in the employ of Paul Leo Bennett.

Suppose defendant's evidence would support a finding that Lucille Parker was primarily a housewife and her husband worked primarily in construction and welding on the day of the accident. If then the evidence is believed that she or her husband or both *also* leased a farm upon which they raised corn and on the occasion in question she was hauling corn from this farm to the mill in a truck loaned her husband, the "business or occupation" exclusion is established unless the truck in which the corn was hauled is a "private passenger automobile" as that term is defined in the agreements.

This brings us to Finding 15. By this finding it appears the trial court thought the International truck might be a "private passenger automobile" and defendant, by failing to offer evidence that it was not, failed to prove the "business or occupation" exclusion. Assuming, *arguendo*, that defendant had the burden to prove the non-existence of the exception to the exclusion, see 19 G. Couch, Cyclopedia of Insurance Law § 79:384 (2d ed. R. Anderson 1968) (also citing cases *contra*), we hold that under no circumstances and notwithstanding the use to which it might be put can this kind of truck capable of hauling heavy loads of corn be a "private passenger automobile" as that term is defined in these agreements. *Seaford v. Insurance Co., supra; Marshall v. Washington National Insurance Co.,* 246 N.C. 447, 98 S.E. 2d 345 (1957) ; *Taft v. Maryland Casualty Co.,* 211 N.C. 507, 191 S.E. 10 (1937) ; *King v. Woodward,* 464 F. 2d 625 (10th Cir. 1972) ; *See Corcoran v. The State Automobile Insurance Assoc.,* 256 Minn. 259, 98 N.W. 2d 50 (1959).

In *Seaford* the exclusion from non-owned automobile coverage applied when the vehicle was used in any occupation of the insured except when the vehicle being operated was "a private passenger automobile." The vehicle in question was a tractor-trailer unit. After deciding that such a vehicle was an "automobile" within the extended coverage provisions we nevertheless affirmed a judgment on the pleadings dismissing plaintiff's action upon the ground that the truck was being operated in a

"business or occupation" of the insured. The Court must have assumed without discussion that a tractor-trailer type vehicle could not be a "private passenger automobile." In *Marshall* we held, as a matter of law, that a pick-up truck could not be a "private passenger automobile of the pleasure type" as that term was used in an accident insurance policy although the evidence was that the pick-up truck was the only vehicle owned by the insured at the time he took out the policy and that it was used essentially for personal and pleasurable purposes. We said, "The defendant had the right to prescribe the type of vehicle it desired and was willing to cover in this limited coverage insurance policy. The use to which the insured put the truck could not and cannot change the plain meaning of the language of the policy or extend its coverage." 246 N.C. at 448, 98 S.E. 2d at 346. In *Taft*, we held that a Ford truck pulling a four-wheel, 20-foot trailer, although being used at the time for pleasure, could not, as a matter of law, be a "passenger automobile" as that language was used in the insurance policy sued on. Considering a policy with an exclusion identical to those here, the Tenth Circuit Court of Appeals, applying Oklahoma law, held, "a GMC pick-up truck being used for the transportation of a load of strawberries is not a private passenger automobile." *King v. Woodward, supra* at 628.

At this trial there seems to have been no genuine issue of material fact nor any real challenge to the credibility of defendant Mutual's evidence. Regarding the credibility of the witness Lucille Parker, we note that she testified against her own interest. Defendant, however, prior to trial never moved under Rule 56 for summary judgment. Had this pre-trial motion been made and had defendant upon the hearing made the same showing which it made at trial, the motion would have been well taken. *Kidd v. Early,* 289 N.C. 343, 222 S.E. 2d 392 (1976).

Since, however, there is no evidence to support Finding 9 and since both Findings 9 and 15 seem to have been made by the trial court under a misapprehension of applicable law, these findings are set aside and the judgment vacated. The case is remanded to the Court of Appeals to be returned to the Superior Court for a new trial. *Helms v. Rea, supra.*

New trial.