THE AETNA CASUALTY AND SURETY COMPANY v. LARRY DENNIS FIELDS, MARY LOU SILVERS, DONNA MARIE BEAM, EDWARD NORMAN PETERSON, VIRGINIA ROBINSON BUCHANAN, LINDA CATHERINE HOLLOWAY, JANICE GROVE, BARBARA ANN BUCHANAN, HAZEL VIRGINIA FOX, TINA LEIGH McPETERS, AND FRANCIS LOUISE WILSON

No. 9126SC175

(Filed 3 March 1992)

**Insurance § 69 (NCI3d)— automobile insurance—underinsured coverage—stacking—not a private passenger vehicle**

Summary judgment was correctly granted for plaintiff insurance company in an action arising from an accident involving a van transporting defendants to work where the van in which defendants were riding when injured was owned by Mayland Transportation and insured by Aetna; Mayland's sole business was transporting employees of Baxter Health Care to and from Baxter's place of business; the policy issued by Aetna covered four 15 passenger vans; and defendants sought

to stack UIM coverage. The language of N.C.G.S. § 20-279.21(b)(4) makes it clear that intra-policy stacking is only available when the coverage is nonfleet and the vehicle is of the private passenger type. Although the vans are by definition nonfleet because N.C.G.S. § 58-40-10(2) provides that fleet coverage is available only if five or more vehicles are owned by a named insured, the insured vehicle here was not a private passenger vehicle because its use was commercial.

**Am Jur 2d, Automobile Insurance § 329.**

**Combining or "stacking" uninsured motorist coverages provided in fleet policy. 25 ALR4th 896.**

APPEAL by defendants from order entered 5 December 1990, by *Judge Chase B. Saunders,* in MECKLENBURG County Superior Court. Heard in the Court of Appeals 14 November 1991.

The order entered allowed plaintiff's motion for summary judgment and declared underinsurance coverage of $100,000 available to any single defendant and $300,000 for all appellants in this accident.

*Bailey and Bailey, by G. D. Bailey and J. Todd Bailey, for defendant-appellant, Virginia Robinson Buchanan.*

*Duffus & Coleman, by Robert C. Younce, Jr., for defendants-appellants, Larry Dennis Fields, Edward Norman Peterson, and Mary Lou Silvers.*

*Donny J. Laws for defendant-appellant, Janice Grove.*

*Elmore & Powell, P.A., by Bruce A. Elmore, Jr., for defendants-appellants, Tina Leigh McPeters and Linda Catherine Holloway.*

*Norris & Peterson, P.A., by Staunton Norris, for defendant-appellant, Francis Louise Wilson.*

*Scott E. Jarvis & Associates, by Scott E. Jarvis, for defendants-appellees, Donna Marie Beam, Barbara Ann Buchanan, and Hazel Virginia Fox.*

*Underwood Kinsey Warren & Tucker, P.A., by Kenneth S. Cannaday and Frank W. Snepp, for plaintiff-appellee.*

AETNA CASUALTY AND SURETY CO. v. FIELDS

[105 N.C. App. 563 (1992)]

JOHNSON, Judge.

Appellee, The Aetna Casualty and Surety Company, (hereinafter Aetna), issued a policy of business auto coverage to Mayland Transportation, Incorporated, (hereinafter Mayland), with a policy period from 7 August 1988 through 7 August 1989, providing coverage for liability, uninsured motorists, and underinsured motorists. The vehicles covered were four 15 passenger Dodge vans. The limits of bodily injury liability were $100,000 for each person and $300,000 for each accident. The underinsured motorist coverage had the same limits.

Mayland is a for profit North Carolina corporation with its principal place of business in Spruce Pines, North Carolina. Its sole business is that of transporting employees of Baxter Health Care to and from their residences to Baxter's place of business near Marion, North Carolina, for a fee. The drivers of the vans were also Baxter employees, and received free transportation and a salary of $65 per month from Mayland. The other employees paid a fee based on the distance of their homes from Baxter.

Fortner Insurance Agency, Inc. wrote the policy. The risk was ceded to the North Carolina Reinsurance Facility. Because the passengers were charged, the drivers and passengers were transported to the same place of employment, and the vans were not furnished by the employer, Fortner rated the risk under the "van pool" classification contained in the Facility's "Commercial Automobile Manual of Rules and Rates." The Manual defines van pools as "[a]n automobile of the station wagon, van truck, or bus type used to provide prearranged commuter transportation for employees to and from work and is not otherwise used to transport passengers for a charge."

On 12 May 1989, one of the insured vehicles was being driven by appellant Fields to transport the other appellants to Baxter. The insured vehicle was involved in a collision with an automobile, and as a proximate result of the negligence of the driver of the automobile, all the appellants sustained severe bodily injuries. The negligent driver of the automobile had liability insurance with Nationwide Mutual Insurance Company, with liability limits in the aggregate amount of $100,000 for all claims arising out of any one accident. Aetna admits that each appellant sustained compensable damages in excess of all sums available from the Nationwide policy, and any other liability insurance policies or bonds applicable

to their claims. Thus, appellants seek to "stack" the underinsured coverages for each of Mayland's four vans.

Each appellant has made claims upon Aetna for benefits under the underinsured motorist provision of the policy. Aetna admits that it is liable to appellants but contends that its aggregate limit of $300,000 applies. Aetna denies that the law requires intra-policy stacking of the aggregate limits of U.I.M. coverage of all four vans insured under its policy.

The issue on appeal is whether the trial court correctly granted summary judgment for plaintiff. Summary judgment is properly granted if the pleadings, depositions, interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to summary judgment as a matter of law. *Johnson v. Insurance Co.*, 300 N.C. 247, 252, 266 S.E.2d 610, 615 (1980). In granting summary judgment for Aetna, the trial court held that Aetna's maximum liability is limited to $100,000 for any one claimant and $300,000 for any one accident, regardless of the number of vehicles or insureds covered by the policy, or claims made pursuant to the policy.

First, we note that appellants and appellee raise issues as to whether the appellants, as class 1 or class 2 insureds, can avail themselves of intra-policy stacking. *See Sutton v. Aetna*, 325 N.C. 259, 382 S.E.2d 759, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989); *See also Crowder v. N.C. Farm Bureau Mut. Ins. Co.*, 79 N.C. App. 551, 340 S.E.2d 127, *cert. denied*, 316 N.C. 731, 345 S.E.2d 387 (1986). Our disposition of whether stacking is allowed in the case *sub judice*, however, does not rest upon the classification of the insureds, but rather upon the type of vehicle the insureds were occupying at the time of the accident.

General Statute § 20-279.21(b)(4) instructs this Court as to whether intra-policy stacking for underinsured motorist coverage is applicable to any claim:

> In any event, the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant pursuant to the exhausted liability policy and the total limits of the owner's underinsured motorist coverages provided in the owner's policies of insurance; it being the intent of this paragraph to provide to the owner, in instances where more than one policy may

AETNA CASUALTY AND SURETY CO. v. FIELDS

[105 N.C. App. 563 (1992)]

apply, the benefit of all limits of liability of underinsured motorist coverage under all such policies: Provided that *this paragraph shall apply only to nonfleet private passenger motor vehicle insurance as defined in G.S. § 58-40-15(9) and (10).* (Emphasis added).

The language of this statute makes it clear that intra-policy stacking is only available when the coverage is nonfleet *and* the vehicle covered is of the private passenger type.

General Statute § 58-40-10(2) provides that fleet coverage is available only if five or more vehicles are owned by a named insured. Aetna's policy afforded coverage for only four vans; therefore, the first requirement of G.S. § 20-279.21(b)(4) is met. Although the vans are by definition nonfleet, they are not of the private passenger type also required by the statute. General Statute § 58-40-10(1)a, b and c state that a private passenger motor vehicle means:

a. A motor vehicle of the private passenger or station wagon type that is owned or hired under a long-term contract by the policy named insured and that is neither used as a public or livery conveyance for passengers nor rented to others without a driver; or

b. A motor vehicle with a pickup body, a delivery sedan or a panel truck that is owned by an individual or by husband and wife who are residents of the same household and that is not customarily used in the occupation, profession, or business of the insured other than farming or ranching. Such vehicles owned by a family farm co-partnership or corporation shall be considered owned by an individual for purposes of this Article; or

c. A motorcycle, motorized scooter or other similar vehicle not used for commercial purposes.

We find that the insured vehicle in question was not a private passenger vehicle because its use was commercial. *Black's Law Dictionary* defines commercial as "connected with trade and traffic or commerce in general; occupied with business and commerce." 245 (5th ed. 1979). Commercial use has also been defined as "having financial profit as the primary aim." 15A C.J.S. 1 (1979). In its broad sense, "commercial" encompasses "all business and industrial enterprises, and in a comprehensive sense it includes occupations

and recognized forms of business enterprise which do not necessarily involve trading in merchandise[.]" *Id.* Commercial activity in its broad sense "includes any type of business activity which is carried on for a profit." *Id.* at 2; *See Kinney v. Sutton*, 230 N.C. 404, 53 S.E.2d 306 (1949) (Operating a restaurant or dining-room for profit is a commercial activity, as it is an undertaking relating to commerce or trade.).

The North Carolina Supreme Court stated in *Kirk v. Insurance Co.*, 254 N.C. 651, 656, 119 S.E.2d 645, 648 (1961), that the test as to whether an automobile is commercial "is the character of the use of the vehicle taken into consideration with the form of the car." In *Kirk*, the Court held that the truck in question, used principally in the business of Southern Railway Co., was a commercial automobile. *Id.; See Hardee v. Southern Farm Bureau Casualty Ins. Co.*, 127 So.2d 220 (1961) (Commercial automobile has a meaning readily ascertainable in the plain, ordinary, and popular sense of the language used, and truck used for transporting pulpwood for sale was a commercial automobile.). The *Kirk* Court also opined, "The words 'commercial use' connote use in a business in which one is engaged for profit." 254 N.C. at 656, 119 S.E.2d at 648.

In *Lloyd v. Insurance Co.*, 200 N.C. 722, 158 S.E. 386, (1931), the insurance policy included a provision for indemnity for fatal injury sustained while riding in or driving in a pleasure type automobile. The vehicle in question was a 1½ ton Ford truck used principally on a milk route. The Court found that the vehicle was by intention, use, and construction a commercial vehicle. Coverage was denied, as the vehicle was not of the pleasure type specified in the policy provision. *Id.*

In the case *sub judice*, Mayland was a for profit organization, created solely for the purpose of transporting Baxter's employees for a fee. The use of the van generated profit for the business, and without such use, no business would have existed. The only purpose for which Mayland existed was to provide transportation for Baxter's employees. Mayland's use of the insured van provided a service for a fee and thereby generated a profit. As in *Lloyd*, the van in the case *sub judice* was by intention, use, and construction a commercial vehicle, as it was engaged in a business for profit.

To further illustrate that the vehicle in question is not of the private passenger type required by statute, we look to G.S. § 20-4.01(27)(g). There, the General Assembly defined "private

passenger vehicles" as "[a]ll other passenger vehicles not included in the above definitions." Included in the "above definitions" is a "for hire passenger vehicle." G.S. § 20-4.01(27)(b) defines "for hire passenger vehicles" as:

> Vehicles transporting persons for compensation. This classification shall not include vehicles operated as ambulances; vehicles operated by the owner where the costs of operation are shared by the passengers; vehicles operated on behalf of any employer pursuant to a ridesharing arrangement as defined in G.S. 136-44.21; vehicles transporting students for the public school system under contract with the State Board of Education or vehicles leased to the United States of America or any of its agencies on a nonprofit basis; or vehicles used for human service or volunteer transportation.

The ridesharing exception found in G.S. § 136-44.21 does not apply in this case because to constitute ridesharing, the transportation must be "incidental to another purpose of the driver" and "not operated or provided for profit." Here, appellants concede that Mayland Transportation, Inc. operated the vans exclusively for transporting employees to and from work at Baxter Health Care. Thus, the vehicle in question fails to meet the threshold requirement of G.S. § 20-279.21(b)(4) which requires vehicles to be of the private passenger type before intra-policy stacking can occur.

In addition, the policy in question is by acknowledgement of all parties captioned "Business Auto Coverage Form" and appears on its face to be a type of insurance coverage that is excluded from the stacking provisions of G.S. § 20-279.21(b)(4) which covers only nonfleet private passenger motor vehicle insurance.

Accordingly, defendants-appellants are denied the benefits of stacking because the insured vehicle is not of the private passenger type required by G.S. § 20-279.21(b)(4). Under the facts of this case, the law does not require intra-policy stacking. The decision of the trial court limiting Aetna's liability for underinsurance coverage to $300,000 is therefore

Affirmed.

Judges EAGLES and ORR concur.